Commonwealth *v*. Holton, Appellant.

Argued September 14, 1966. Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., absent).

*Bernard L. Segal,* First Assistant Defender, with him *Herman I. Pollock,* Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 17, 1966:
Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Defendant, Charles Holton, was found guilty of rape, burglary, and related charges in July of 1965. This appeal is from the judgment of sentence entered at that time.

After carefully reviewing the testimony, I conclude that defendant should be granted a new trial for the following reasons:

1. *Appellant's alleged confession was secured through police coercion at a time when appellant was physically ill.*

Appellant was arrested on April 7, 1965, and held for five hours by the police in their interrogation room. Appellant testified that during these five hours, while the police were questioning him, he had stomach pains, he was sweating, and his insistent requests to see a doctor were denied. At some time during this period appellant allegedly confessed.

Appellant's testimony as to his physical condition was corroborated by two physicians at the Philadelphia Prison's Detention Center. Dr. Norman Anderson, a psychiatrist on the staff of the Detention Center, examined appellant on April 9, 1965, Dr. Anderson concluded, at that time, that appellant was on the verge of delirium tremens. Dr. Anderson further stated that symptoms which often mark the onset of delirium tremens are aches and pains, sweating, a sick feeling, headaches and stomach pains. He also pointed out that the condition is characterized by a "large or consuming thirst and a desire for a great deal of water."

Dr. Henry M. Berk, a physician at the Detention Center, examined appellant on the morning of April 8, 1965. Dr. Berk testified that an unidentified doctor had placed appellant on an alcoholic withdrawal regime immediately upon his arrival at the Detention Center. Dr. Berk's own examination confirmed the need for such treatment. Dr. Berk also testified that the

prison psychiatrist, Dr. Anderson, had examined appellant on April 9, and had noted on the medical records: "Police picked him up the day before yesterday and insisted via coercive tactics—that is, intimidation, sado-masochism, et cetera—that he was the rapist. Fearing them, he confessed . . . Actually, the inmate is a chronic alcoholic who has had several episodes of d.ts. He works as a laborer. Still in withdrawal from alcohol. Impression: Chronic alcoholic; continue alcohol withdrawal regime." Dr. Berk also stated that gastro-intestinal complaints and great thirst resulting from dehydration are common in persons on alcoholic withdrawal.

Significantly, Detective DeBenedetto testified to the presence of all of these symptoms at the time of appellant's interrogation. He described the appellant as having a great thirst. He admitted that appellant had complained of stomach pains and that he had, in fact, given appellant some Maalox. He acknowledged that appellant had placed his head on the table and had exhibited fatigue. In fact, appellant's illness was brought to the attention of the committing magistrate by Detective DeBenedetto at the preliminary hearing.

One additional point should be noted. Both at the hearing on the motion to suppress the confession and during trial appellant explicitly stated that he was given a glass of wine by Detective DeBenedetto as part of the officer's "cure" for his ailment. At neither hearing did the detective contradict or seek to rebut this assertion.

The Supreme Court of the United States has held that sickness or ill health may influence a defendant's will to resist and render him prone to the overbearing techniques of improper questioning. *Reck v. Pate*, 367 U.S. 433 (1961). In the instant case, appellant was questioned by police officers in an interrogation room for five hours despite his obvious illness. Under these

circumstances, I conclude that the alleged confession was the product of improper police coercion and should have been suppressed. I base this conclusion "not only on the lack of rational choice on the part of appellant but also on 'a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion.'" *Commonwealth ex rel. Gaito v. Maroney,* 422 Pa. 171, 179, 220 A. 2d 628, 632 (1966).

2. *The lower court failed to charge the jury properly concerning the victim's identification of her assailant.*

In *Commonwealth v. Wilkerson,* 204 Pa. Superior Ct. 213, 217-18, 203 A. 2d 235 (1964), we stated:[1] "[T]estimony as to identification need not be received by the jury with caution and indeed may be treated as the statement of a fact where (1) the witness had an opportunity to observe the assailant clearly, (2) the witness is positive in his identification, (3) the witness' identification testimony is not weakened by prior failure to identify, and (4) the witness' testimony remains positive and unqualified even after cross-examination. *However, if any one of these four conditions is not met, 'the accuracy of the identification is so doubtful that the court should warn the jury that the testimony as to identity must be received with caution'.*" (Emphasis added).

The lower court, in its charge, did instruct the jurors, in a most cursory manner, that it was for them to decide whether the victim's identification of her assailant was positive or unqualified. The facts of this case, however, demanded a clear warning to the jury that the identification testimony should be received

---

[1] This statement of the law was based on the opinion of Mr. Chief Justice Bell in *Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A. 2d 820, 826 (1954), cert. denied, 348 U.S. 875, 75 S. Ct. 112, 99 L. Ed. 688.

with caution, because it did not satisfy all of the conditions mentioned above.

The victim first observed her assailant at the time of the crime. Cf. *Commonwealth v. Sharpe,* 138 Pa. Superior Ct. 156, 10 A. 2d 120 (1939). Moreover, when she first described her assailant to the police she neglected to mention that he had a very prominent mustache.

Finally, and most important, the victim did not identify appellant as her assailant when she first saw him in a line-up at the Detention Center. Only after she had left the Detention Center and was riding home with Detective DeBenedetto did she make her identification known.

These circumstances required a clear and definite warning by the judge to the jury that the identification testimony should be received with caution. This the court failed to do.

3. *The court improperly injected highly emotional religious statements into its supplementary charge.*

The jury, after several hours of deliberation, asked for a supplementary charge concerning various points of law. At the conclusion of this supplementary charge the court stated: "Now, you have taken a long time considering this case. You are citizens of this city, and you are citizens of America, and act as such. You are not living in a foreign country. You are here in a land of freedom where we try to protect people, and that's all the people, not just some of the people, everybody needs protection of the courts. If they don't get protection of the courts, you won't get protection of the courts either when your day comes in court. Remember that. You destroy the principles upon which democracy sits in America by not giving proper and adequate consideration, they won't be existing for you when you have your day in court. I'm not telling you what kind of verdict to bring in, but I'm telling you

to stand up like men and women and do what you should do before your God to whom you will answer some day whether you answer to this court or not. You will answer to God some day for the way you conduct yourselves in this case. The chips will be down, and He will know everything you have done. You won't withhold one thing from Him."

Appellant contends that this exhortation amounted to binding instructions to the jury to bring in a verdict of guilty. The Commonwealth argues, on the other hand, that this charge suggested to the jury that it should acquit appellant.

It is not for us to determine the court's intent in making this statement or the jury's inference from it. What is significant is that both interpretations are equally plausible. More importantly, individual jurors might have concluded, as appellant suggests, that the court was threatening them with the wrath of God should they bring in a verdict of not guilty.

Religious beliefs may not and should not affect a jury's deliberation. The lower court's very forceful language may well have aroused strong emotion and produced a verdict based more on personal religious belief than on the facts. This possibility alone would require the granting of a new trial.

I would vacate the judgment of sentence and grant a new trial.