**UNITED STATES of America**

v.

**Allen COADES, Appellant in No. 72–1321, and John Coades.**

**Appeal of John COADES, in No. 72–1322.**

**Nos. 72–1321, 72–1322.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 28, 1972.

Decided Oct. 26, 1972.
As Amended Dec. 11, 1972.

W. Donald Sparks, Eckell, Sparks, Vadino, Auerbach & Monte, Chester, Pa., for appellant.

C. Oliver Burt III, Asst. U. S. Atty., Philadelphia, Pa., Carl J. Melone, U. S. Atty., for appellee.

Before STALEY, VAN DUSEN and MAX ROSENN, Circuit Judges.

### OPINION OF THE COURT

**PER CURIAM:**

Claiming denial of constitutional due process and of right to counsel, primarily because of alleged tainted identification evidence introduced at trial, John and Allen Coades appeal judgments of conviction by a jury on bank robbery charges, 18 U.S.C. § 2113, in the United States District Court for the Eastern District of Pennsylvania. Because we find independent origins for the not unduly suggestive identifications, we affirm.

The Coades brothers object to both photographic and lineup identification procedures employed in the investigation of the August 5, 1969, robbery of the West End Branch of the Fidelity Bank. The district court refused to suppress identification testimony after a hearing at which John Coades testified that he had been placed in approximately nine line-ups and Allen Coades testified that he had been placed in approximately six line-ups. The line-ups were held after each Coades' arrest. No evidence that either defendant was placed in a line-up following his preliminary hearing was presented at the suppression hearing. Neither defendant ever had, or was advised of a right to have, counsel present at any line-up. An attorney for John Coades was actually barred from one line-up.

Four bank employees testified at trial on direct examination that they had identified one or both defendants at line-ups. Suppression hearing testimony indicates that at least two of these witnesses had identified John Coades in line-ups at least twice each. A fifth bank employee, who did not testify at trial, had identified John Coades in at least three line-ups and Allen Coades in at least two line-ups. Testimony by a police detective at trial included reference to this witness' identifications. None of the Government witnesses testified on direct examination at trial about any line-up identifications of either defendant made after his preliminary hearing.

Seven bank employees, including the five whose line-up identifications were introduced at trial, were shown photograph displays which included pictures of the Coades. The suppression hearing record is confused, but there is testimony by several witnesses that they identified each defendant in photograph displays as many as three or four times. The last photograph displays were shown to each of the seven employees in November 1969 or January 1970 after each of the defendants had been indicted.

Defendants claim that the absence of counsel at the line-ups and at the photograph displays violated their sixth amendment right to counsel. The Supreme Court, in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), rejected application of a per se exclusionary rule to at-trial testimony about line-up identifications solely because of absence of counsel at a line-up

when that line-up preceded the initial adversary criminal proceeding. In the present case, the various line-up identifications entered into evidence by the Government at trial were held before the defendants' respective preliminary hearings. Presence of counsel at those line-ups was thus not constitutionally required. As to the photograph displays, defendants' argument is rejected by our recent decision in United States ex rel. Reed v. Anderson, 461 F.2d 739 (3d Cir. 1972), where we held that there is no right to counsel at such displays.

Defendants also argue that the multiplicity of viewings was unduly suggestive and conducive to misidentification. Due process requires the exclusion of identification testimony following a line-up "that is unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby v. Illinois, 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L. Ed.2d 411 (1972); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The same rule governs testimony about photographic identifications. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States ex rel. Reed v. Anderson, 461 F.2d 739, 746 (3d Cir. 1972). In applying this rule, we have used as guidelines the seven factors discussed in United States v. Wade, 388 U. S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Some of the factors are used to explore the intertwined question whether there is an independent origin for the witnesses' identifications. We stated the factors in United States v. Higgins, 458 F.2d 461, 465 (3d Cir. 1972):

(1) the manner in which the pre-trial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.

After a careful review of the suppression hearing and trial transcripts, we find no significant problems in allowing the admission of the identification testimony with respect to factors (1), (3), (4), and (6). Evidence in relation to factors (2) and (7) supports a conclusion that there was an independent origin for the identifications. The Coades were identified in both photographic and live viewings within three days of the robbery. The bank employees had viewed the robbers for from three to five minutes in a very well-lit bank, some of them from as close as one foot.

Because of the repeated viewings of the Coades by the witnesses, however, factor (5) weighs against admissibility of the identifications. Viewings of a defendant in photograph displays on two occasions were found not overly suggestive in both United States v. Higgins, 458 F.2d 461, 466 (3d Cir. 1972), and Simmons v. United States, 390 U.S. 377, 382, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). However, in the present case, one witness identified John Coades in two line-ups and three or four photograph displays and Allen Coades in one line-up and three or four photograph displays. Another witness, who did not testify but whose line-up identifications were referred to at trial by a police detective, identified John Coades in three line-ups and two or three photograph displays and Allen Coades in two line-ups and one or two photograph displays.

We have no doubt that repeated viewings of a defendant can suggest to a witness that "this must be the man." In the totality of the circumstances here, however, we do not find a danger that the repeated viewings caused misidentifications. The absence of any proof that the witnesses ever identified other suspects or failed to identify the Coades in the many photograph displays and line-ups, combined with the evidence that the witnesses had good views dur-

ing the crime and made accurate descriptions of defendants before any viewings, convinces us that the identification testimony was properly admitted.

Defendants also argue that they were prejudiced because the district court judge presiding at the suppression hearing mistakenly believed the burden of proof to show inadmissibility was on defendants. The judge corrected himself before rendering a decision, however, and we can find no evidence in the record that defendants were prejudiced in presentation of evidence by his earlier misunderstanding.

The judgment of the district court will be affirmed.