369 A.2d 452

COMMONWEALTH of Pennsylvania,
Appellee,

v.

Lawrence C. HOLZ, Appellant.

Superior Court of Pennsylvania.

Argued March 19, 1976.

Decided Nov. 22, 1976.

George Gershenfeld, Philadelphia, for appellant.

Stewart J. Greenleaf, Assistant District Attorney, Willow Grove, William T. Nicholas, First Assistant District Attorney, and Milton O. Moss, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appellant was found guilty by a jury of robbery, theft of movable property, rape, involuntary deviate sexual intercourse, simple assault—attempt, possession of a weapon with intent to employ it criminally, felonious restraint, recklessly endangering another person, terrorist threats and criminal conspiracy. Timely post-trial motions were made and denied. Following evaluations by the Court Study Team of the Norristown State Hospital, appellant was sentenced to two concurrent 10 to 20 year prison sentences and to two concurrent 2½ to 5 year prison sentences, the sentences to run consecutively to a Montgomery County sentence which the defendant was

then serving and consecutively to a sentence for murder in a Philadelphia case which sentence had not yet been imposed because of a pending appeal.

Three issues are raised on appeal: sufficiency of the identification of appellant, authority of the trial judge to direct that sentences run consecutively with a sentence not yet imposed in a murder case, and sufficiency of the evidence.

In the late evening of July 23, 1974, Steven Gazey, aged 21, and his girlfriend were riding in a 1967 four-door Pontiac automobile when two young men ran toward the passenger side of the car as it turned from County Line Road onto York Road in Hatboro, Montgomery County. Thinking they were friends of his because one of them looked familiar, Gazey asked the girl to open the door so that he could hear what the men were saying. She unlocked the back door and the two men jumped in. They said they were going to Willow Grove, approximately three miles away, and Gazey agreed to take them there. He proceeded south on York Road. Midway through Hatboro he stopped at a traffic light and spoke with a number of his friends standing or seated near the curb, including Michael Faywewicz, one of his best friends, who was sitting under a street light at the curb. The light changed and the Gazey car continued south on York Road. As it approached a four-way stop sign in Willow Grove, the man sitting directly behind the young lady put a gun to the back of her neck and asked if she or Steven Gazey had any money. The man took Gazey's wallet and the girl's purse. The car was halted at a stop sign for the duration of the robbery. For about the next five minutes, Gazey was ordered to drive from point to point as the men in the rear seat directed. The men then ordered him to turn up the rear view mirror so that he could not see into the back seat, and the young lady was ordered into the back seat at gunpoint and her clothing forcibly removed. Each of the men then raped her in

turn and forced her to take part in involuntary deviate sexual intercourse while the other kept the gun at the back of Gazey's head. During the course of this atrocity, which lasted for a period of thirty to forty-five minutes, one of the men also punched the young lady in the side. She was then ordered back into the front seat. Gazey, was then directed to drive around, away from any main roads, for fifteen or twenty minutes; but was finally ordered to stop at the intersection of Osbourne and Rubicam Avenues in Abington Township, Montgomery County, where the two young men left the car. Before leaving, they warned Gazey and his companion not to call the, police or else "We'll get you". They told the young couple that they had taken identification from the wallet and purse and knew who they were and where they lived and warned them not to look back as the men departed. The two men thereupon ran into the woods and disappeared. Gazey and his companion then drove up Fitzwatertown Road until he saw some lighted houses, stopped at one and asked the occupants to call the police. He then carried the young woman into the house where they waited for an ambulance that took her to Abington Hospital.

The foregoing facts are not in dispute; the question is simply one of identification. Prior to the trial, the police showed Gazey, Michael Faywewicz and the young lady a photo file of possible suspects. The girl could not identify either of her assailants because she had avoided looking at their faces. However, Gazey and Faywewicz identified the pictures of appellant and another as the two men in question. Prior to the trial, appellant moved to suppress this evidence on the contention that his picture and that of his companion had been placed in the photo file on top of two other photographs in such a way that they fell forward slightly when opened for inspection. It was his contention that anyone looking at the file would realize that the police had superimposed these two photo-

graphs in an earlier file and that, therefore, they were the suspects. The trial judge stated that he was far from satisfied that there was anything unduly suggestive about the photographic displays, but that he would give the appellant the benefit of the doubt and ordered the evidence based on them suppressed.

At the trial, appellant was unequivocally identified both by Steven Gazey and Michael Faywewicz as one of the two men in the rear of the Gazey car. Gazey testified that his identification rested on four periods of observation while the men were in the car. He said that he observed both men for a period of about twenty-five seconds as they entered the car and looked closely at appellant because he had initially believed that he was a person he knew. He further testified that for a period of approximately ten minutes while he was driving from Hatboro to Willow Grove he constantly looked into the rear view mirror in front of him and studied both men because of a growing feeling that something was amiss. He continued his scrutiny of the men for approximately five minutes between the robbery and the time he was ordered to flip up the mirror. When the ordeal was finally over and the men were leaving the car, he turned in his seat and looked them in the face because he wanted to be certain of identification, despite the threat of bodily harm if he did so. In summary, he testified on direct and cross-examination that he was absolutely sure that the appellant and his companion were the two men in his car.

This identification was corroborated by Michael Faywewicz who had been sitting under a street light in an area well illuminated when the Gazey car stopped at the traffic light on York Road in Hatboro. He was sitting only a few feet from the Gazey car when it pulled up to the stop light. He talked to Gazey, who was well known to him, and observed appellant in the rear seat from a distance of only a few feet for a period of approximately

thirty seconds before the traffic light changed and the Gazey car drove away. He studied appellant carefully because he, like Gazey, thought that appellant looked like someone that he knew. A detective gave corroborating testimony that this intersection was well illuminated by an overhead light.

None of this identifying testimony depended in any way upon the earlier photographic display which Gazey and Faywewicz had seen. Nevertheless, appellant contends that the suppressed photographic display necessarily tainted any subsequent identifications by Gazey and Faywewicz and requires the exclusion of any subsequent in-court identification.

This contention is not well founded. As this court said in *Commonwealth v. Weber*, 232 Pa.Super. 6, 8, 331 A.2d 752, 754 (1974)—

"It is true, as asserted by appellant, that a pre-trial photo-array can be so suggestive as to violate due process. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); cf. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Therefore, it would be error to admit any evidence tainted by the procedure. *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). Where the pretrial procedure is infirm, however, the Commonwealth may still prove the existence of an independent basis for the in-court identification. *Wade*, supra; *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971)."

As stated in *Commonwealth v. Rankin*, 441 Pa. 401, 405, 272 A.2d 886, 888 (1971)—

"Our task is to determine whether the in-court identification had an 'independent origin' or was 'tainted by the illegal line-up.' *Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967).

". . . The record clearly demonstrates sufficient independent grounds for the identification of appellant by Dora Clayton."

The trial judge addressed himself to this issue and came to the following conclusions, as summarized in his opinion:

"He (appellant's counsel) also claimed that such an unduly suggestive procedure necessarily tainted any subsequent identifications and contended that any in-court identifications should be suppressed. Steven Gazey testified in court that he could identify defendants Wareham and Holz as the perpetrators of the above crimes independent of his viewing the photographs. Michael Faywewicz also testified that he could identify Holz independent of his viewing of the photographs. With an abundance of caution, the court suppressed the evidence of the photographic identifications but refused to suppress any in-court identifications not based on such photographs, because it was clearly established that the in-court identification was totally unaffected by the photographic displays."

There is nothing in the record which would give us a basis for substituting our judgment for that of the trial court. The record indicates that at the time sentences were imposed the appellant was incarcerated in Holmesburg prison in Philadelphia. He had been tried in the Court of Common Pleas of Philadelphia and convicted of the crime of first degree murder,[1] but was not yet sentenced because post-trial motions in the murder case had not been concluded.

In the instant case, the sentences imposed by the Court were made consecutive to such sentences as might be imposed by the Court of Common Pleas of Philadelphia for the murder conviction.

1. Conviction of first degree murder carries a mandatory sentence of either death or life imprisonment. 18 Pa.C.S. § 1102.

■ The appellant claims that the Court was without authority to impose a sentence consecutively to another one not yet pronounced. Rule 1406 of the Pa. Rules of Criminal Procedure provides with respect to sentencing as follows:

"(a) Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently unless the judge states otherwise.

.    .    .    .    .    .    .    .

"(c) When, at the time sentence is imposed, the defendant is imprisoned under a sentence imposed for any other offense or offenses, the instant sentence which the judge is imposing shall be deemed to commence from the date of imposition thereof unless the judge states that it shall commence from the date of expiration of such other sentence or sentences."

It will be noted that under the Rules if the judge does not specify that the sentences are to be consecutive they automatically are concurrent. Rule 1406 distinguishes between the situation where a defendant is "incarcerated for another offense" as in 1406(a) and one where a defendant is "imprisoned under a sentence imposed" for another offense or offenses as in 1406(c). In the former situation the defendant must be incarcerated but need not be sentenced for another offense. In the latter situation he must be sentenced and incarcerated for another offense. It is and has been the obligation and the prerogative of the judge imposing sentence to determine whether or not the sentence which he imposes should run concurrently or consecutively with other sentences. When a judge is confronted with the determination of whether a sentence which he is about to impose should run concurrently or consecutively with a sentence for another offense for which the same defendant has been convicted and is incarcerated he may so provide in his

order imposing the sentence. This is in keeping with the problems arising when there are convictions against the same defendant in two or more counties. There occurs frequently in counties surrounding the more densely populated ones situations where a defendant is convicted in the more populous county and has filed post-trial motions. He is then convicted later in a nearby county where his post-trial motions have been filed and concluded and he is called for sentence before his post-trial motions in the more populous county have been ruled upon. The judge first to impose sentence does and should continue to have the prerogative to determine whether or not the sentence which he will impose should be concurrent with or consecutive to the sentence likely to be later imposed in the other county. Were it otherwise, unnecessary complications would result. In the event no sentence is imposed in the other county, no complications arise. Were we to accept the interpretation urged upon us by appellant, the judge first imposing sentence upon a defendant whom he knows has been convicted of another offense or other offenses could never make his sentence run consecutively in the other one or ones.

Appellant also complains that the evidence is insufficient to support his convictions. The evidence supporting guilt is of such abundance that this complaint is totally without merit.

Affirmed.

SPAETH, J., files a concurring and dissenting opinion in which JACOBS and HOFFMAN, JJ., join.

SPAETH, Judge, concurring and dissenting:

I agree with the majority except as regards a judge's ability to impose a sentence consecutive to another sentence not yet imposed.

The majority relies on Rule 1406(a), which provides:

Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is

imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently unless the judge states otherwise.

According to the majority, "incarcerated for another offense" refers to a situation where the defendant has been convicted for another offense and is in prison awaiting sentence but not yet sentenced. This interpretation cannot be correct.

Rule 1406(a) contemplates two situations, which are described, respectively, in the first two phrases of the rule.

The first situation is described by the phrase, "[w]henever more than one sentence is imposed at the same time on a defendant." Suppose that the defendant is before Judge A, having been found guilty of more than one offense; for example, a jury has found him guilty of burglary and robbery. The judge will then be obliged to impose "more than one sentence"—one for burglary and one for robbery. Under Rule 1406(a), if the judge wants the sentences to be consecutive, he must say so; otherwise they will be concurrent.

The second situation is described by the phrase, "or whenever a sentence is imposed on a defendant who is incarcerated for another offense." Here, our hypothetical defendant is before two sentencing judges, Judge A and Judge B. If Judge A *has already* imposed sentence on the defendant for a separate conviction, then Rule 1406(a) is applicable to Judge B's sentence. Under the rule, Judge B's sentence will be concurrent with Judge A's sentence unless Judge B specifically says it is to be consecutive.[1]

---

1. It may be granted that Rule 1406(a) does not address itself to the situation where Judge A's sentence is not a sentence of imprisonment, *i. e.*, where, at the time Judge B imposes sentence, the defendant is not "incarcerated". This situation would arise if Judge A's sentence were a sentence of probation. It seems curious that the rule does not address itself to this situation, but we need not concern ourselves with that now.

A third situation is presented if, when Judge B imposes sentence, the defendant *has not yet* been sentenced by Judge A for the other offense (although he may be in prison awaiting Judge A's sentence). In this situation —which is the present case—Rule 1406(a) does not apply. Judge B is not impowered to decide that the sentence he is about to impose will run consecutive to a sentence still to be imposed by Judge A. This is so because in providing that Judge B's sentence "shall be deemed to run concurrently unless the judge states otherwise," Rule 1406(a) necessarily assumes the existence of a prior sentence. The sentence of Judge B cannot run either beside or after the sentence of Judge A if Judge A's sentence does not exist.

This conclusion is simply a matter of logic, or grammar. However, considerations of good sentencing practice lead to the same conclusion. For Judge B to say, "My sentence shall be consecutive to whatever sentence Judge A some day decides to impose", can accomplish nothing except an interference with Judge A. Suppose Judge B thinks the proper sentence for the offense he is concerned with is 5 to 10 years; then he should sentence the defendant to 5 to 10 years. Nothing can be gained so far as determining what is a fair sentence by making the sentence consecutive to whatever sentence Judge A decides to impose. The only result will be to deprive Judge A of the option of making his sentence concurrent with or consecutive to Judge B's. Suppose that when the defendant appears before Judge A, Judge A is told that Judge B has imposed a sentence to run consecutive to whatever sentence Judge A imposes. This is the same as telling Judge A that he has been deprived of the ability that he would otherwise have had to provide that his sentence should run consecutive to Judge B's. There is no reason why Judge A should be thus deprived; indeed, he should not be, for it can only interfere with his ability to frame a sentence appropriate to the case before him.

The majority says that if its interpretation of Rule 1406(a) is not accepted, "unnecessary complications" will occur. Majority opinion at p. 384. The majority does not, however, say what these complications will be. In fact, by interpreting the rule to require Judge B to make his sentence concurrent with or consecutive to an existing sentence, complications will be avoided: Judge A will know, as he should know, what Judge B has done. He will therefore be able without interference to frame his sentence as seems to him just.

Finally, history is against the majority. The Act of May 28, 1937, P.L. 1036, § 1, 19 P.S. § 894, provided:

> . . . all sentences . . . of persons who at the time sentence is imposed are held in custody in default of bail, or otherwise, shall . . . be computed from the date of commitment . . ., unless the person sentenced shall then be undergoing imprisonment *under a sentence imposed for any other offense or offenses,* in which case the said sentence shall . . . be computed, either from the date of imposition thereof or from the expiration of such other sentence or sentences, as the court shall, in its discretion, direct.

It is true that the Act has been suspended by the new rules on sentencing. Pa.R.Crim.P. 1415(c). That does not mean, however, that any substantial change was contemplated. In 1972 the legislature enacted chapter 13 of the Crimes Code, which dealt in a comprehensive manner with the authority of the court in sentencing. 18 Pa.C.S. §§ 1301–1382. This enactment was then supplemented by the promulgation by the Supreme Court of the new rules on sentencing (some of which suspended parts of the Crimes Code). Pa.R.Crim.P. 1401–1415. Thus the law as regards sentencing was codified. Some changes resulted but some requirements remained the same. The adoption of Rule 1406 did change the sentencing process to the extent of presuming a concurrent effect of a sen-

tence on previous sentences; the Act of May 28, 1937, *supra*, 19 P.S. § 894, did not provide for such a presumption. However, in my view, what has not been changed is the requirement of the Act that if a judge wants to impose a sentence consecutive to another judge's sentence, he must wait until that other judge's sentence has been imposed.

In summary, the majority, relying solely on Rule 1406, has approved a practice hitherto forbidden by the Act of May 28, 1937, supra, 19 P.S. § 894. There is no need to interpret Rule 1406 to have this effect. To do so, moreover, is contrary both to logic and good sentencing practice.

I would affirm the conviction but vacate the sentence and remand for resentencing consistent with this opinion.

JACOBS and HOFFMAN, JJ., join in this opinion.