393 A.2d 1239

**COMMONWEALTH of Pennsylvania**

v.

**Harvey SILVER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 1977.

Decided Nov. 3, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Michael R. Stiles, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was convicted following a jury trial of rape,[1] robbery,[2] criminal conspiracy,[3] and two counts of possession of instruments of crime.[4] Post-verdict motions were denied, and appellant was sentenced. For the reasons stated herein, we affirm.

On January 6, 1976, at approximately 12:00 p. m., a young black man entered a Philadelphia employment agency, operated by Mrs. Lila Fox, and requested an application. The only other person then in the office, Mrs. Loretta Collier, was also applying for employment. When Mrs. Fox went to the stairway to see her daughter off to lunch, she observed two other men lingering on the steps to the second floor office.

Mrs. Fox returned to her desk, and one of the men who had been on the steps entered the office within moments. At gunpoint, Mrs. Fox was ushered by the second intruder into a back room, where she was blindfolded and raped twice. The third man assisted robbing Mrs. Collier and removing company checks from the front office. Appellant and his brother, a co-defendant, were arrested several hours later at their home. Employment agency checks were recovered in a search of their living quarters.

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3701.

3. 18 Pa.C.S. § 903.

4. 18 Pa.C.S. § 907.

Mrs. Fox made positive identifications of both defendants at a line-up and preliminary hearing. Mrs. Collier identified appellant's brother and co-defendant on both occasions, but failed to identify appellant. At the hearing on a motion to suppress all identifications and physical evidence, the court determined that the line-up identifications were tainted, reasoning that the line-up was impermissibly suggestive in that both appellant and his twin co-defendant were in the line-up. The court found that the preliminary hearing was also conducted under impermissibly suggestive circumstances, and its suppressed those identifications. The court held that Mrs. Fox's in-court identifications of the co-defendants and Mrs. Collier's in-court identification of appellant's co-defendant were admissible, resting upon independent bases.

Appellant's first contention is that the court below erred in refusing to grant a mistrial when Mrs. Collier unexpectedly identified appellant at trial. This was the first time that Mrs. Collier identified appellant. She was unable to identify appellant at the line-up and gave contradictory identifications at the preliminary hearing. Finally, at the suppression hearing, Mrs. Collier's testimony shows that she did not observe appellant's face when he first came into the office, because at that time his back was to her as he spoke to Mrs. Fox and forced her into the back room. The court below concluded that Mrs. Collier's in-court identification would not be suppressed because it did not follow identifications made in the former improper proceedings. The trial judge allowed the testimony but promised to give cautionary instructions, which he did.

Although identification evidence is clearly sufficient to support a conviction, even in the face of contradictory alibi evidence, *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), there are evidentiary and constitutional parameters which must be respected. In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court found that the sixth amendment right to counsel applied to identification confrontations conducted after the initiation of adversary proceedings. *Stovall v.*

*Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), determined that some identification confrontations may be so impermissibly suggestive as to lead to irreparably erroneous identifications, and thus constitute deprivations of due process of law. A later in-court identification must have a basis independent from the infirm proceeding.

There are other cases which involve proper identification proceedings, resulting in no identification or qualified identification. In such a situation, the subsequent in-court identification is at once admissible. In these cases, however, the supreme court has cautioned:

> "[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." *Commonwealth v. Kloiber, supra* 378 Pa. at 424, 106 A.2d at 826.

The instant case presents an interesting blend of the two levels of identification evidence analysis. The pre-trial identification procedures were ruled impermissibly suggestive, thus indicating that an in-court identification would have to rest on an independent basis. At the same time, the witness exposed to those proceedings made no identifications at them, thus necessitating that a later in-court identification be accompanied by a *Kloiber* charge. Appellant insists that the protections of due process, first urged in relation to identification evidence in *United States v. Wade, supra,* must be extended in this case. Therefore, appellant maintains that the Commonwealth's failure to establish an independent basis for Mrs. Collier's in-court identification is fatal to the Commonwealth's case, and that a new trial is required.

Appellant points to *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976), in support of his position. In that case, photographs were repeatedly displayed to a murder victim's

daughter. The appellant's photograph was contained in several of the displays, but the witness failed to make an identification. The appellant was then arrested, placed in a line-up, and asked to speak. The witness identified him then, and she repeated her identification at trial. The supreme court found that the suppression court erred in failing to suppress the witness's identification, since no independent basis was established. The court declared:

"Following a suggestive pre-trial identification procedure, a witness should not be permitted to make an in court identification unless the prosecution establishes by clear and convincing evidence that the totality of the circumstances affecting the witness's identification did not involve a substantial likelihood of misidentification. (citations omitted)

. . . Trial testimony identifying one as the person observed at the time of a crime is a one-on-one confrontation involving circumstances even more suggestive than those present at pre-trial one-on-one confrontations. During the trial, the identifying witness knows that the defendant present in the courtroom has been accused, arrested, and is being tried for the crime. Prior to trial, such circumstances may not yet have occurred or may not yet be known to the witness. Thus, the testimony of a witness who will point an accusing finger at the defendant during the trial, should be prohibited unless the prosecution establishes by clear and convincing evidence at a suppression hearing that the witness's proposed trial identification will be reliably based on the witness's observation at the time of the crime, and that the identification was not induced by events occurring between the witness's observations at the time of the crime and the witness's in-court identification. Whether the prosecution has met its burden requires a consideration of the totality of the circumstances." *Fowler, supra,* 466 Pa. at 203–204, 352 A.2d at 19–20 (citation omitted).

The court thus indicated that the whole area of identification evidence is a particularly sensitive one, and that, no

matter what the circumstances, great care must be taken to ensure that Commonwealth action does not promote mistaken identification.

■ It might be argued that because Mrs. Collier made no identification at either of the pre-trial proceedings, she remained unaffected by the suggestiveness therein. Therefore, a later identification could not be tainted by the earlier proceedings. It is clear, however, that it is the suggestive proceeding itself, and not the identification made or lack thereof, which could potentially taint a later identification.

Nevertheless, even if we were to conclude that both evidentiary and constitutional safeguards should be accorded in a case in which no identifications are made at impermissibly suggestive pre-trial identification proceedings, but a later in-court identification is made, we are compelled to deny appellant the relief requested in the instant case.

■ The chief concern with identification evidence is its reliability. In this case, the jury was exposed to the surprise identification testimony by Mrs. Collier. When the court refused a mistrial at that point, defense counsel determined to establish the unreliability of that testimony, and in fact, counsel quizzed Mrs. Collier at length. The jury learned that Mrs. Collier was unable to identify appellant just two days prior to the trial because appellant's back had been to her. In addition, the lower court instructed the jury:

> "Where a witness is not in a position to clearly observe the assailant, or he or she is not positive as to identity, or his positive statements as to identity on one occasion are weakened by qualifications, or a prior failure to identify, the accuracy of the identification may be so doubtful as to be received by the jury with caution. And I will so charge you that you should receive the identification testimony of Loretta Collier with some caution."

The cross-examination and instruction served to alert the jury to the unreliability of Mrs. Collier's in-court identification. But the further fact of Mrs. Fox's unhestitating identification renders the admission of Mrs. Collier's harm-

less. Mrs. Fox identified both appellant and his co-defendant on three separate occasions. At both the suppression hearing and at trial, Mrs. Fox testified to facts which clearly evidenced an independent basis for her in-court identification. Mrs. Fox saw appellant when she went to the steps to check on her daughter. She later saw him in favorable lighting conditions when he came into the office to whisper something to the first intruder. She testified that she studied his face when he approached her to have a pencil sharpened. She looked at him when she turned around to return the pencil to him, and she continued to observe his face until she realized he had drawn a gun. It was appellant who ushered her to the back room and ordered her to undress. Appellant finally blindfolded Mrs. Fox, prior to forcing her onto a couch and raping her. Mrs. Fox said she had ample opportunity to view appellant and that she noted especially his complexion, lighter than the co-defendant's, and his bad teeth. In addition, a search of the rear bedroom in the residence occupied by appellant produced the employment agency checks taken in the robbery. The rear bedroom was the one in which appellant was taken into custody on the day before the search.

Under the circumstances of this case and the test enunciated in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), we find that the admission of Mrs. Collier's in-court identification, accompanied by effective cross-examination and a *Kloiber* cautionary charge, was harmless error, at most. Finding that "[t]he uncontradicted evidence of guilt [is] so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict," 476 Pa. at 417, 383 A.2d at 168, we affirm the judgment of sentence.

▪ Appellant's second argument is that the trial court erred in refusing to permit testimony regarding the absence of seminal fluid on appellant's undershorts. Pursuant to Pa.R.A.P. 1925(b), any alleged error to be asserted on appeal but not presented to the trial judge, upon request, after the

taking of an appeal, is deemed waived. Because appellant did not include this with those raised in accordance with Pa.R.A.P. 1925(b), it is waived.

■ Appellant's final contention is that:

"The court erred in interviewing tainted jurors *in camera* without the presence of the accused or counsel, and in refusing to grant a mistrial after it was established they had heard remarks deprecating appellant's defense from a court officer during the jury deliberations."

It is not necessary for us to address this issue at all because defense counsel did not raise the issue in post-trial motions. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). The issue was, however, presented to the court below in accordance with Pa.R.A.P. 1925(b), and the court's opinion accompanying the appeal to this court discusses the issue. It has been held that failing to include an issue in written post-verdict motions is not cured by the lower court's addressing the contention in its opinion. *See Commonwealth v. Slaughter*, 482 Pa. 538, 494 A.2d 453 (1978); *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978).

Judgment of sentence affirmed.

CERCONE, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion, in which SPAETH, J., joins.

The decision in this case was reached before the retirement of HOFFMAN, J.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, Judge, dissenting:

Appellant contends that the lower court erred in refusing to grant a mistrial when a witness identified him at trial.[1] I should remand for proceedings consistent with this opinion.

1. Because of this disposition, I should not reach appellant's additional contentions that the lower court erred in (1) failing to permit a defense witness to testify to the absence of semen in appellant's

At approximately 9:00 p. m., on January 6, 1976, appellant and his codefendant, his identical twin brother, were arrested in their West Philadelphia apartment and charged with rape,[2] robbery,[3] criminal conspiracy,[4] and possession of instruments of crime.[5] Soon thereafter, the police conducted a line-up at which Ms. Lila Fox, a complainant, identified both appellant and his brother. Ms. Loretta Collier, a second complainant, identified appellant's brother, but failed to identify appellant. At a preliminary hearing held on January 28, 1976, Ms. Fox again identified appellant and his codefendant. Ms. Collier identified appellant's codefendant, but, once again, was unable to identify appellant.

Appellant filed a pre-trial motion to suppress all identifications and physical evidence. After conducting a hearing, the suppression court issued findings of fact and conclusions of law. It suppressed all identifications made at the line-up, reasoning that the line-up in which appellant appeared with his identical twin codefendant was impermissibly suggestive. The court also suppressed all identifications of appellant and his brother at the preliminary hearing which, the court concluded, was also conducted under suggestive circumstances. The court found that Ms. Fox's in-court identifications of appellant and his brother and Ms. Collier's in-court identification of appellant's brother had an independent origin and, therefore, were purged of the taint of the suppressed identifications. Because Ms. Collier did not identify appellant at the line-up, preliminary hearing, or suppression hearing, the court did not make any further determination.

clothing, (2) conducting an *in camera* hearing without the presence of appellant or counsel, and (3) refusing to grant a mistrial after presentation of evidence that two jurors overheard remarks deprecating appellant's defense from a court officer during jury deliberations.

2. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. 3121.

3. The Crimes Code, supra; 18 Pa.C.S. § 3701.

4. The Crimes Code, supra; 18 Pa.C.S. § 903.

5. The Crimes Code, supra; 18 Pa.C.S. § 907.

A jury trial in the Philadelphia Court of Common Pleas commenced on July 2, 1976. The Commonwealth called Ms. Fox who testified that on January 6, 1976, she operated a West Philadelphia employment agency. While she assisted Ms. Collier, a customer, appellant's codefendant entered the premises and requested an employment application and a pencil. A few minutes later, another person whom she identified as appellant entered the premises, whispered something to his codefendant, and then walked out. After Ms. Fox finished reviewing the codefendant's application with him, appellant reentered the agency and asked her to sharpen his pencil. While she turned toward the pencil sharpener, appellant opened his coat and revealed a gun. The intruders then robbed Ms. Collier. Appellant then instructed Ms. Fox to move to the back part of the office, separated from the outer office by a floor-to-ceiling partition. She testified that she was blindfolded, bound, gagged, and raped by both intruders.

Ms. Collier corroborated Ms. Fox's testimony in all material respects. She identified appellant and his codefendant as the men who robbed her while she was in Ms. Fox's employment agency on January 6, 1976. This in-court identification was the first time Ms. Collier unequivocally identified appellant after three pre-trial confrontations.[6] When the witness identified appellant, counsel for appellant requested a side-bar conference during which he asked the court to declare a mistrial. After a discussion of the suppression order, the scope of the court's findings as to independent basis, and a request by counsel that the court conduct a suppression hearing to determine whether Ms. Collier's iden-

6. At the line-up, Ms. Collier failed to identify appellant. At the preliminary hearing, she gave contradictory identifications. At the suppression hearing, she testified that when one of the intruders (whom she identified at trial as appellant) asked to have his pencil sharpened, she did not pay attention. In fact, at all times, the intruder's back faced her. When the intruder opened his coat, Ms. Collier said she could not see what was in it. This phase of the incident lasted between three and five minutes. Further, in its opinion, the lower court also acknowledged that her in-court identification was the first time that she identified appellant.

tification of appellant rested on an independent basis, the trial judge ruled that he would allow the testimony and instruct the jury to receive her identification with caution because of her prior failure to identify appellant.[7] Counsel for appellant renewed his exception.

On July 13, 1976, the jury found appellant guilty of all crimes charged.[8] Following denial of post-verdict motions, the lower court sentenced appellant to consecutive terms of imprisonment of two and a half to ten years on the rape and robbery convictions and suspended sentence on the remaining convictions. This appeal followed.

Appellant contends that Ms. Collier's in-court identification testimony was constitutionally infirm because it stemmed not from her mental recollection of the crime, but from her observation of appellant at prior suggestive confrontations. Pennsylvania courts have addressed challenges to the admissibility of in-court identifications which follow pre-trial confrontations either as an evidentiary matter of credibility or as an issue of constitutional law. The United States Supreme Court has also noted this dichotomy: "The reliability of properly admitted eyewitness identification, like the credibility of other parts of the prosecution's case is a matter for the jury. But . . . in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law." *Foster v. California*, 394 U.S. 440, 442–443, fn. 2, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969).

7. The lower court gave the following instruction to the jury: ". . . Where a witness is not in a position to clearly observe the assailant, or she is not positive to identity, or positive statements as to identity on one occasion are weakened by qualifications, or a prior failure to identify, the accuracy of the identification may be so doubtful as to be received by the jury with caution. And I will so charge you that you should receive the identification testimony of Loretta Collier with some caution . . .." See *Commonwealth v. Baker*, 220 Pa.Super. 86, 283 A.2d 716 (1971).

8. The jury found appellant's codefendant guilty of robbery, criminal conspiracy, and possessing instruments of crime. They returned a verdict of not guilty on the charge of rape. We affirmed the judgment of sentence per curiam. *Commonwealth v. Silver*, 256 Pa.Super. 543, 389 A.2d 179.

The first line of cases holds that a pre-trial failure to identify or an equivocal or inaccurate identification conducted under proper circumstances goes only to the weight of a subsequent in-court identification and does not preclude the admission of the later identification. Thus, in *Commonwealth v. Tate*, 229 Pa.Super. 202, 323 A.2d 188 (1974), appellant contended, *inter alia*, that an in-court identification should be excluded because the witness, a victim of a robbery, failed to give police officers a detailed description of the robbers and failed to identify appellant at a preliminary hearing. In rejecting this claim, our Court stated that ". . . these factors affect . . . only weight and credibility, not admissibility. Neither factor served to impermissibly taint the in-court identification." supra, 229 Pa.Super. at 204, 323 A.2d at 189. *See also Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Hall*, 456 Pa. 243, 317 A.2d 891 (1974); *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972); *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820; cert. denied 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); *Commonwealth v. Holton*, 209 Pa.Super. 22, 223 A.2d 754 (1966) (Dissenting Opinion by HOFFMAN, J.) rev'd, 432 Pa. 11, 247 A.2d 228 (1968); *Commonwealth v. Wilkerson*, 204 Pa.Super. 213, 203 A.2d 235 (1964).

The second group of cases concerns the scope of constitutional protection against the admission of evidence derived from suggestive identification procedures. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Eighth Circuit Court of Appeals has stated: "As a general rule, the identification testimony of one who has actually observed a crime is admissible and it is for the trier of fact to determine whether the testimony is worthy of credence. A different rule applies, however, where improper police suggestions may have influenced the witnesses to identify an innocent suspect. Limits on the admissibility of identification testi-

mony which may have been influenced by governmental suggestion are mandated by the Sixth Amendment right to counsel clause and the due process clauses of the Fifth and Fourteenth Amendments." *Sanchell v. Parratt*, 530 F.2d 286, 292 (8th Cir. 1976).[9] This latter line of cases involves in-court identifications which follow infirm or tainted out-of-court identification proceedings. In such situations, a witness should not be permitted to make an in-court identification unless, by the totality of the circumstances, it is determined that the in-court identification has an independent origin which is "sufficiently distinguishable to be purged of the primary taint." *United States v. Wade*, supra;[10] *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct.

9. *United States v. Wade*, supra, announced that identification confrontations arranged once adversary proceedings have commenced are a "critical stage" to which the Sixth Amendment right to counsel attached. *Stovall v. Denno*, supra, decided on the same day, held that identification confrontations can be so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny an accused due process of law. In the instant case, appellant does not allege that this Sixth Amendment right to counsel has been violated. Therefore, I shall confine my discussion to the impact of the identification procedures on appellant's due process rights.

10. In determining whether an independent basis exists, the United States Supreme Court, in *United States v. Wade*, supra 388 U.S. at 241, 87 S.Ct. at 1939 instructed courts to consider several factors. These factors are:

"(1) the manner in which the pre-trial identification was conducted;

"(2) the witness' prior opportunity to observe the alleged criminal act;

"(3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the [out-of-court] identification;

"(4) any previous identification by the witness of some other person;

"(5) any previous identification of the defendant himself;

"(6) failure to identify the defendant on a prior occasion; and

"(7) the lapse of time between the alleged act and the out-of-court identification."

*U.S. v. Higgins*, 458 F.2d 461, 465 (3d Cir. 1972). Courts have invoked the criteria announced in *Wade* in cases involving varying kinds of pre-trial identification procedures, e. g., *United States v. Higgins*, supra (photographic identification); *Commonwealth v. Taylor*, supra (lineup identification).

407, 9 L.Ed.2d 441 (1963). The burden is upon the prosecution to establish the independent basis by clear and convincing evidence. *United States v. Wade,* supra; *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977); *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Rodriquez,* 234 Pa.Super. 294, 338 A.2d 633 (1975). See generally *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977); *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Holz,* 245 Pa.Super. 376, 369 A.2d 452 (1976); *Commonwealth v. Wortham,* 235 Pa.Super. 25, 342 A.2d 759 (1975); *Commonwealth v. Weber,* 232 Pa.Super. 6, 331 A.2d 752 (1974); *Commonwealth v. Minifield,* 225 Pa.Super. 149, 310 A.2d 366 (1973).

I must now determine whether we should analyze appellant's contention using evidentiary or constitutional principles. At first blush, the instant case resists categorization. On the one hand, to hold that the issue of the witness's in-court identification was a matter solely for the evaluation of the trier of fact would ignore the possibility that the unconstitutionally suggestive pre-trial confrontations created or unfairly reinforced the witness's perception that appellant was the robber. On the other hand, because the witness did not identify appellant at those prior confrontations, the present case does not seem appropriate for classification in the second category of cases, which deal, typically, with in-court identifications which follow unlawful pre-trial confrontations *and* identifications. However, upon closer examination, I conclude that the facts and circumstances of the instant case present compelling reasons why appellant's contention should be controlled by the constitutional analysis contained in the latter category.

In *Foster v. California,* supra, the United States Supreme Court recognized that an in-court identification may be irreparably tainted by unnecessarily suggestive pre-trial confrontations even though those proceedings did not produce an immediate identification. In *Foster,* the sole witness to

the crime attended a three person line-up. The petitioner was six inches taller than the other participants and wore a leather jacket which the witness said was similar to the one worn by the robber. In spite of these circumstances, the witness could not make a positive identification. The witness then asked to speak with the petitioner who was brought into an office and sat at the same table with the witness. After this one-on-one confrontation, the witness was still unable to identity petitioner as the robber. A week to ten days later, the witness attended a second line-up consisting of five men; petitioner was the only person in this line-up who had participated in the earlier line-up. For the first time the witness positively identified petitioner as the robber. The witness repeated the identification at trial. In holding that the identification procedure violated petitioner's due process rights, *Simmons v. United States,* supra, the Supreme Court stated: "The suggestive elements in this identification procedure made it all but inevitable that [the witness] would identify petitioner whether or not he was in fact 'the man'. In effect, the police repeatedly said to the witness, '*This* is the man.' (citation omitted) . . . [T]he pretrial confrontations clearly were so arranged as to make the resulting identifications virtually inevitable." supra, 394 U.S. at 443, 89 S.Ct. at 1129 (emphasis supplied).

The significance of *Foster* resides in the principle that it is the manner in which the pre-trial confrontation or procedure is conducted which is the source of the suggestiveness and constitutional infirmity, regardless of whether that confrontation yields an out-of-court identification. Therefore, although the first two confrontations in *Foster* produced no positive identification, the Supreme Court held that the procedures were so "conducive to irreparable mistaken identification" that the eventual identification was tainted by the earlier infirmity.

*Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976), also demonstrates that an in-court identification may be

tainted by prior suggestive confrontations even though identification immediately followed those confrontations. In *Fowler,* the victim's daughter caught a momentary glimpse of her father's attackers. A few hours later, she described the height, build, complexion, and clothing of one of the men she had seen. During the three months which followed the murder, the police repeatedly interviewed the daughter, and on at least three occasions showed her groups of photographs which included appellant's picture. Although she held the picture aside and said it resembled the man she had seen in her father's home, she was unable to make a positive identification. Each of the photographs shown to the witness was a mug shot except for that of appellant and one other person who were depicted in full frontal view in civilian clothes. About three months after the crime, the daughter encountered appellant at a restaurant and recognized his voice. A few weeks later, she again failed to identify appellant from a photographic array comprised of mug shots except for appellant and another person who, as before, were displayed in civilian clothes. After tracing the license number which the daughter recorded at the restaurant and reported to the authorities, the police arrested appellant. The next day, approximately three and a half months after the incident, the police placed appellant in a line-up. After appellant spoke, the daughter identified him. At trial, she repeated her identification.

In a pre-trial suppression motion, appellant claimed that the daughter's identification was the product of the suggestiveness arising from the pre-line-up photographic displays and the line-up itself. More specifically, he contended that the repeated displays of his photograph to the victim's daughter created the risk that her eventual identification stemmed from her memory of the photographic image rather than from her mental image of him at the scene of the crime. Therefore, he asserted that she should not have been permitted to identify him in court. The court denied the suppression motion.

On appeal our Supreme Court recognized that circumstances surrounding an in-court identification are such that extreme caution must be exercised before such testimony is admitted: "Trial testimony identifying one as the person observed at the time of a crime is a one-on-one confrontation involving circumstances even more suggestive than those present at pretrial one-on-one confrontations. During the trial, the identifying witness knows that the defendant present in the courtroom has been accused, arrested, and is being tried for the crime. Prior to trial, such circumstances may not yet have occurred or may not yet be known to the witness. Thus, the testimony of a witness who will point an accusing finger at the defendant during the trial, should be prohibited unless  .  .  .  the witness's proposed trial identification will be reliably based on the witness's observation at the time of the crime, and that the identification was not induced by events occurring between the witness's observations at the time of the crime and the witness's in-court identification." *Commonwealth v. Fowler,* supra at 203–204, 352 A.2d at 19. After concluding that the identification procedure was unnecessarily suggestive, the Court considered whether according to the totality of the circumstances, there was an independent basis for the in-court identification. The Court evaluated "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." supra 409 U.S. at 199, 93 S.Ct. at 382.[11] On the facts of the case, the Court concluded that the prosecution had failed to demonstrate an independent origin for the in-court identification by clear

11. These criteria were utilized by the United States Supreme Court in *Neil v. Biggers,* supra, a case involving an allegedly suggestive show-up procedure. The *Neil* factors have been used interchangeably with the *Wade* factors in evaluating whether, according to the totality of the circumstances, and in-court identification rests upon an independent basis.

and convincing evidence. The Court also emphasized that the repeated display of appellant's photograph under unnecessarily suggestive circumstances had heightened the possibility of a subsequent misidentification even though none of the repeated and tainted viewings produced a positive identification.[12] In short, the Pennsylvania Supreme Court reiterated the reasoning of *Foster* that it is the witness's presence at constitutionally infirm confrontations, regardless of whether that witness makes a pre-trial identification, which increases the danger that the witness's eventual identification will derive from a recollection of the person participating in the identification procedure rather than from a mental image of the person actually seen at the time of the crime.

*United States v. Coades,* 468 F.2d 1061 (3d Cir. 1972), reinforces the reasoning of *Foster* and *Fowler.* In *Coades,* appellant was placed in approximately six line-ups and his picture was placed in three or four photographic displays. The witness identified appellant numerous times. Although there were no constitutional violations in the manner in which each of the photographic displays and line-ups was conducted, appellant argued that the multiplicity of viewings was unduly suggestive and conducive to misidentification. The Court of Appeals, echoing the language of the Supreme Court in *Foster,* said: "We have no doubt that repeated viewings of a defendant can suggest to a witness that 'this must be the man.' " supra, at 1063. The danger was not only that such repetition could lead to misidentifications prior to trial, but also that it could contribute or even dictate an in-court misidentification. Therefore, even though none of the confrontations occurred under constitutionally infirm circumstances, the Court required a showing

12. In fact, the United States Supreme Court issued the same caveat in *Neil* when it asserted that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." supra 409 U.S. at 198, 93 S.Ct. at 382.

of independent origin based on the totality of the circumstances to insure that appellant's due process rights had not been violated as a result of the repeated pre-trial confrontations. Because the witness never failed to identify appellant at any of the pre-trial proceedings and because the witness's clear and close vantage point during the crime resulted in an accurate description of the assailant, the Court found the necessary independent basis.

The instant case incorporates the elements of the foregoing cases which utilize a constitutional, rather than an evidentiary analysis. It contains the suggestivity denounced in *Fowler* and *Foster* as well as the repetition condemned in *Neil, Coades,* and *Foster.* The only variable missing in the present case is a pre-trial identification. This omission, however, does not negate the impact of the suggestivity and repetition which characterized the pre-trial confrontations. In fact, it is all the more reason to be vigilant in scrutinizing the validity of the witness's in-court identification. Presumably, the existence of a clear mental image of appellant in the witness's mind would have resulted in an in-court identification at all pre-trial confrontations. The failure to make such a pre-trial identification suggests that the in-court identification stemmed from repetitive suggestive confrontations of witness and accused rather than a pre-existing recollection from the scene of the crime. In short, the necessity for dispelling the nexus between a suggestive procedure and an ultimate in-court identification is not dependent solely upon the existence of a pre-trial identification; equally as important is the *presence* of the witness at a series of suggestive confrontations even though the witness failed to identify appellant at those earlier confrontations. The harm to be prevented, the likelihood of a misidentification, is already complete when a witness attends suggestive and repetitive pre-trial confrontations which stamp a particular person as a prime suspect. It is at this point that the witness is apt to retain the image of the person viewed at the confrontation rather than the memory of the person

actually seen at the crime. It is precisely this "likelihood of misidentification which violates a defendant's right to due process," *Neil v. Biggers,* supra 409 U.S. at 198, 93 S.Ct. at 382, and triggers the constitutional analysis of the cases in the second category to resolve the admissibility of the in-court identification.

Accordingly, I should hold that, in the instant case, before Ms. Collier made an in-court identification, the lower court should have determined that, according to the totality of the circumstances, the in-court identification had a basis independent of the taint of the infirm prior confrontations.[13] Therefore, I should vacate the judgment of sentence and remand for an evidentiary hearing in order to afford the Commonwealth the opportunity to establish by clear and convincing evidence that Ms. Collier's identification was based upon her observation of appellant at the scene of the crime, rather than upon her recollection of the participants in the suppressed pre-trial confrontations. In making this determination, I should have the lower court weigh the considerations outlined in *Wade.* If the court were to determine that Ms. Collier's identification is admissible under these guidelines, appellant could appeal that determination and raise to us other issues properly preserved for our review. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Strickland,* 457 Pa. 631, 326 A.2d 379 (1974).

SPAETH, J., joins in this dissenting opinion.

13. Unlike the majority, I cannot say that the tainted identification, if it had no independent basis, was harmless error under *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). The uncontradicted evidence of appellant's guilt was not, to me, "overwhelming", and I cannot say that a second in-court identification, buttressing Ms. Fox's account, "could not" have contributed to the verdict. *Id.,* 476 Pa. at 417, 383 A.2d at 168.