419 A.2d 1

**COMMONWEALTH of Pennsylvania**

v.

**Bonnie Jean HEATH, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed Jan. 11, 1980.

Winifred H. Jones–Wenger, Philipsburg, for appellant.

Thomas G. Peoples, Jr., District Attorney, Hollidaysburg, submitted a brief on behalf of the Commonwealth, appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

These two appeals, which we have combined for purposes of expediency, arise out of a series of criminal episodes occurring within Blair County. Appeal No. 1331 stems from the robbery of Jack's Quik Mart in Antis Township, Pennsylvania, and the killing of the store's clerk. Following a jury trial commenced on December 1, 1976, appellant was convicted of conspiracy to commit robbery.[1] Appeal No. 1332 arises from the robbery of the Ricche Music Store in Altoona, Pennsylvania, and the assault on the store's clerk. Following a jury trial commenced on April 5, 1977, appellant was convicted of burglary,[2] robbery, and a violation of the Uniform Firearms Act.[3] Post–trial motions in both cases were denied, and appellant was sentenced. A motion to modify the sentences was subsequently denied, and appellant filed the instant appeals in which she raises numerous contentions. Because we find that the trial court erred in its charge to the jury in both cases, we are constrained to reverse the judgments of sentence and remand both cases to the court of common pleas for new trials.

The pertinent facts are as follows. On March 4, 1976, appellant and her co–defendant, Jeffrey Joseph Daugherty, entered the Ricche Music Store in Altoona. The store was attended at that time by only one person, Ms. Ruth Montgomery, a woman of advanced years. The two conspirators initially perused several items in the store, particularly a guitar. Co–defendant Daugherty then forced Ms. Montgomery, at gun point, to the back of the establishment and

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 3502.

3. 18 Pa.C.S. § 6101 *et seq.*

there beat her into a state of semiconsciousness and relieved her of jewelry and money. A subsequent inventory of the store disclosed that a guitar was also missing. On March 9, 1976, a similar incident occurred at Jack's Quik Mart in Antis Township. There, money again was gained at gunpoint, but, however, the sole clerk, Mrs. Shank, was shot repeatedly and killed.

The miscreants were initially arrested in the state of Virginia, where they were charged and convicted of various offenses stemming from the robbery of a country store. At the time of the arrest, police discovered a .25 caliber handgun within a console located between the front seats of the car. Ballistics tests later identified this gun as that from which the shots were fired which had killed the clerk at Jack's Quik Mart. Subsequent searches of the automobile uncovered a guitar, identified as that stolen from the Ricche Music Store, and the pocketbook of the clerk at Jack's Quik Mart. Appellant and her co–defendant were returned to Pennsylvania on September 27, 1976, to stand trial for various offenses arising from four separate criminal episodes in Blair County.

Appellant contends, *inter alia*, that the trial court in both the Ricche Music Store case and the Jack's Quik Mart case erred in charging the jury that her testimony, if she was found to be an accomplice, came from a corrupt source and should be carefully scrutinized. We agree.

In the Ricche Music Store case, appellant testified that although she had entered the store with co–defendant Daugherty, she returned to their parked car before Ms. Montgomery was accosted, and had no knowledge of the events that took place in the store following her departure. Co–defendant Daugherty gave inculpatory testimony, but added that appellant had left the premises before the robbery and that she was unaware of any criminal activity of which he had partaken. Similarly, in the Jack's Quik Mart case, co–defendant Daugherty testified that he ventured alone into the establishment and there shot and killed the lone female clerk after she had given him the money con-

tained in the store's cash register. He testified that appellant was waiting for him in a motel, and that he had told her he was leaving merely to obtain a newspaper and some snacks. Appellant echoed that she was unaware of any criminal activity that took place that evening, and that she was in a local motel during the time of the incident.

In its charge to the jury in the Ricche Music Store case, the trial court gave the following instruction:

"[I]f after viewing all the evidence you conclude that Mrs. Heath did participate in the crime as an accomplice, as I have defined it, then in considering her testimony, you should be guided by certain principles which apply specially to her testimony.

In deciding whether or not to believe the testimony of one alleged to be an accomplice, you should be guided by the following principles: First, the testimony of an accomplice should be looked upon with disfavor because it comes from a corrupt and polluted source. Second, you should examine the testimony of an accomplice closely and accept it only with caution and care. Third, you should consider whether the accomplice's testimony is supported in whole or in part by other evidence aside from his or her own testimony. Fourth, if it is supported by independent evidence, then of course it would be more dependable. However, you may believe an accomplice's testimony even though it is not supported by other evidence." (N.T. 1027).

Nearly the identical charge also was given in the Jack's Quik Mart case:

"[A]fter reviewing all of the evidence [if] you conclude that Mrs. Heath did participate in some or all of the offenses charged as an accomplice, then in considering her testimony, you should be guided by certain principles which apply specifically to her testimony. The same, of course, would be true of any person who you find served as an accomplice in the case.

In deciding whether or not to believe Mrs. Heath and/or Mr. Daugherty, you should be guided by the following

principles. First, the testimony of Mrs. Heath and Mr. Daugherty should be looked upon with disfavor if you decide that either or both was an accomplice because it comes from a corrupt and polluted source. Secondly, you should examine their testimony closely and accept it only with caution and care. Thirdly, you should consider whether their testimony is supported in whole or in part by other evidence aside from his or her own testimony for if it is supported by independent evidence, then it, of course, is more dependent. And finally, you may believe one or the other or both even though it is not supported by other evidence. You, the Jurors, of course, determine that." (N.T. 271).

Although the giving of a "corrupt source" charge has been held proper in situations where the accomplice testifying is a Commonwealth witness, our supreme court has held that such a charge is improper when the accomplice is testifying for the defense. In the case of *Commonwealth v. Russell*, 477 Pa. 147, 152–53, 383 A.2d 866, 868–69 (1978), the court stated:

"Giving an 'accomplice charge' when an accomplice testifies on behalf of the prosecution is a well–established practice. See *Commonwealth v. Sisak*, 436 Pa. 262, 259 A.2d 428 (1969); *see also Cool v. United States*, 409 U.S. 100, 103, 93 S.Ct. 354, 357, 34 L.Ed.2d 335 (1972) (citing cases). Giving such a charge when the witness testifies for the defendant, however, is far less common. There are few reported appellate cases from other jurisdictions directly passing on this issue, which is apparently one of first impression for this Court.

A legitimate basis exists for charging the jury to view an accomplice's testimony with suspicion when the accomplice testified for the Commonwealth. Such a witness, out of a reasonable expectation of leniency, has an interest in inculpating others. This basis is inapplicable, however, when the accomplice testifies on behalf of the defense. One implicated in a crime cannot reasonably expect such leniency by exonerating others, particularly where, as

here, the witness has already been sentenced for committing the crime. Thus, it is unreasonable to infer, and improper for the court to charge, that because this defense witness stood convicted of the crime in question, his testimony must be viewed 'with disfavor' and accepted only with 'caution and care.'" (Footnotes omitted).

■ In the case of *Commonwealth v. Noyer*, 265 Pa.Super. 544, 556, 402 A.2d 679, 685 (1979), this court was presented with a fact situation similar to those in the instant cases. There, we stated:

"In the instant case, appellant took the stand only in his own defense. His testimony was certainly not designed to aid the Commonwealth in prosecuting his co–defendant. Nor was its function the exoneration of his co–defendant. Rather, his testimony was addressed merely to his own defense.

The accomplice charge, long recognized as appropriate when the accomplice testifies for the prosecution and might thereby be prompted by his hope of leniency, *Commonwealth v. Cristina*, 481 Pa. 44, 391 A.2d 1307 (1978); *Commonwealth v. Thomas*, 479 Pa. 34, 387 A.2d 820 (1978); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Vorhauer*, 232 Pa.Super. 84, 331 A.2d 815 (1974), was totally inappropriate in this case. Had appellant by his testimony attempted to exculpate himself and inculpate his co–defendant, this would be a different case. But no such effort was made here. Furthermore, it would be the co–defendant's right, in that situation, to request the cautionary charge. In the instant case, both appellant's counsel and counsel for the co–defendant objected to the charge, and we find that the court erred in giving it. We will therefore vacate the judgment of sentence and remand the case for a new trial." (Footnote omitted).

We find the instant cases to be controlled by *Noyer*. Appellant took the stand in her own defense. Her testimony was not designed to aid the prosecution of her co–defendant nor to exonerate him; it was designed solely for her own de-

fense. Under these circumstances, we find it was error for the trial court to give a corrupt source charge and we therefore reverse both cases and remand to the court of common pleas for new trials.

Appellant raises several other contentions, one of which we shall now review in the interests of judicial economy. She contends that the trial court, in both cases on appeal, erred by refusing to grant her motion for change of venue due to alleged prejudicial pretrial publicity.

Our supreme court has made it clear that an application for a change of venue is addressed to the sound discretion of the trial court whose decision will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). The crux of the matter is whether any juror has formed a fixed opinion of appellant's guilt or innocence as a result of the pretrial publicity. *See Commonwealth v. Casper, supra; Commonwealth v. Kichline, supra.* Normally, one who claims that he has been denied a fair trial because of prejudicial pretrial publicity must show *actual* prejudice in the empaneling of the jury. *See Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Casper, supra; Commonwealth v. Hoss, supra; Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209, *cert. denied*, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973). However, where the publicity is found to be "inherently prejudicial," *i. e.*, so sustained, pervasive, inflammatory and inculpatory, the defendant will be relieved of the burden of showing a nexus between the publicity and actual jury prejudice. *Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra; Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977). Thus, neither the mere existence of extensive pretrial publicity, nor the possibility that prospective jurors will have formed an opinion based on news accounts, will suffice to establish a presumption of prejudice.

In the case of *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), the United States Supreme Court stated:

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

*See also Commonwealth v. Sutton*, 485 Pa. 47, 400 A.2d 1305 (1979); *Commonwealth v. Casper, supra; Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978).

▮▮▮ In cases where prejudicial pretrial publicity is alleged, the trial court should consider: whether the pretrial publicity revealed the existence of the accused's prior criminal record; whether the publicity referred to confession, admissions or reenactments of the crime by the defendant; and whether such information is the product of reports by the police and prosecutorial officers. *Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra.* The presence of one of these elements does not, in itself, warrant a presumption of prejudice. Inquiry must be made to determine whether such publicity has been so extensive, sustained and pervasive that the community must be deemed to have been saturated with it.[4]

4. In determining whether the community has become saturated with prejudicial pretrial publicity, the trial court should consider the size and character of the area concerned, the pervasiveness of the media coverage in the community, and whether there has been a sufficient cooling off period between the publicity and commencement of trial

Applying these principles to the instant case, we conclude that the trial court properly denied appellant's motion for a change of venue. Hearings on appellant's petitions for change of venue were held on November 23 and 24, 1976, in the Jack's Quik Mart case and on March 30 and 31, 1976, in the Ricche Music Store case. The evidence presented in both cases indicated that the criminal episodes involved received coverage by several newspapers and radio stations, and by one television station in the Blair County area. The reports were largely factual accounts of appellant's apprehension and current developments in the trials. The media treated the matter as they would any other story of local interest. No editorial comment of any import was presented, no mention was made of any prior convictions, nor was any prejudicial information furnished to the media by the district attorney or state or local police. In both cases, the court found that the publicity was neither constant, extensive nor sustained, but rather unbiased, with no degree of sensationalism. Accordingly, the court concluded that there was no doubt that a fair and impartial trial could be obtained in Blair County. We agree with the trial court's findings and are unable to conclude that the publicity present in the instant cases was so extensive and prejudicial as to give rise to a presumption of prejudice. Therefore, to warrant a change of venue, it was incumbent on appellant to prove actual prejudice in the empaneling of the jury. *See Commonwealth v. Casper, supra.* Appellant, however, does not allege any specific instances of prejudice in the empaneling of the jury, and our review of the record does not disclose any such instances. We therefore find appellant's contention to be without merit.

Accordingly, we reverse the judgments of sentence and remand both cases to the Court of Common Pleas of Blair County for new trials.

that the prejudicial effect of the publicity may be deemed to have dissipated. *See Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra.*