434 A.2d 115

**COMMONWEALTH of Pennsylvania,**

v.

**Jay C. SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Aug. 14, 1981.

34

John J. O'Brien, West Chester, for appellant.

Stanton M. Lacks, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

On December 17, 1977, a man later identified as Jay C. Smith, the appellant herein, went to the cashier's office on the second floor of the Sears and Roebucks Store at the Neshaminey Mall, Bensalem, Bucks County. He was wearing a dark blue uniform and hat of the type worn by security personnel. The Armored Motor Service Company regularly picked up cash receipts at the Neshaminey branch of the Sears Store and the appellant indicated that he had come to pick up the daily receipts. The appellant had a plastic identification card bearing his photograph and the signature purportedly of a guard by the name of Albert Wharton who was an employee of Armored Motor Service. The assistant head cashier has a list of authorized personnel from the Armored Motor Service and the list also bore the signatures of the various security personnel who were authorized to receive cash. The cashier checked the signature on her list which carried the name of Albert J. Wharton. However, the signature on the cashier's list was different than that appearing on the identification card in the appellant's possession. Because of this discrepancy the cashier became suspicious and called the store security office. In the meantime the man representing himself to be Mr. Wharton became increasingly nervous. Finally, he demanded entry to the cashier's office. When he was told that he could not go back to where the cashier was he leaped over a barrier and grabbed the card from the desk where the cashier had placed it. In his hurry to leave he bumped into another employee in the office. He then proceeded down the escalator and was observed by a salesman on the first floor as he pushed people aside to make good his escape. Appellant was not arrested for this crime until September of 1978.

Appellant was tried before Garb, J. and a jury and found guilty of attempted theft by deception. His motion for a new trial was dismissed and he was sentenced to two to four years imprisonment.

Appellant's first contention is that he was denied protective measures which would have afforded him a trial by a fair and impartial jury. His first argument under this concept is that his motion for change of venue should have been granted. Appellant, at the time of the offense involved in this case, was the principal of the Upper Merion Senior High School, located in Montgomery County.[1] In July and August of 1978 the appellant was arrested for various crimes which he allegedly committed in Chester, Delaware and Montgomery Counties. A change of venue was granted with respect to alleged crimes committed in the counties other than Bucks County and trial was held in Dauphin County as to those charges.

At the time of the appellant's arrest in July and August 1978, for offenses other than those involved in this case, there was considerable press and television coverage given to the appellant. Many articles appeared in The Philadelphia Inquirer and Philadelphia Bulletin as well as in the Philadelphia Journal, the Philadelphia Daily News, the Daily Intelligencer which is published in Doylestown, Pennsylvania, and the Quakertown Free Press. These articles appeared mainly at the end of August and beginning of September, 1978. Appellant was not tried in the court below until February, 1979.

The court below was concerned particularly with a series of television news broadcasts. In this regard the court stated in its opinion:

> We viewed 6 separate news broadcasts by KYW–TV of their news coverage of the defendant's various arrests. The televised coverage was quite graphic in displaying the

---

1. The court below, in its opinion, incorrectly stated that the appellant had been the principal of "Upper Merion Township, Delaware County High School for approximately 12 years." This error in the designation of the high school of which the appellant was principal has no bearing on the outcome of this case.

guns that were taken from the defendant and from his car, together with an oil filter type of silencer, these photographs were obviously made in police headquarters, mug shots, suggestions of other crimes by policemen on camera, photographs of the defendant's home, comments by a neighbor and a student in the high school at which he was principal, a comment about stolen school property and an apparent photograph of someone carrying an allegedly stolen school picture, comments by the school superintendent on camera, pictures of the defendant being led in handcuffs from a hearing to a police car, composite pictures, and policemen interviews. Although we believe these went quite far, we still do not believe that they necessitated a change of venue without a determination of whether a fair jury can be impaneled by voir dire considering that there were only six of these presented and that they occur over five months prior to the time of trial.

 The court was also concerned with a publication appearing in the Philadelphia Journal on September 1, 1978, which contained a composite drawing suggesting that the appellant might have been involved in a murder with which he had not been charged. The court was satisfied, however, that this adverse publicity was contained in a publication of relatively small circulation in Philadelphia and of unknown circulation in Bucks County and that it did not deny the appellant a fair trial. An application for change of venue is addressed to the sound discretion of the court, and its exercise of that discretion will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Tolassi*, 489 Pa. 41, 413 A.2d 1003 (1980). As this court stated in *Commonwealth v. Heath*, 275 Pa.Super. 478, 419 A.2d 1 (1980) at 275 Pa.Super. 487, 419 A.2d 5:

In cases where prejudicial pretrial publicity is alleged, the trial court should consider: whether the pretrial publicity revealed the existence of the accused's prior criminal record; whether the publicity referred to confession, admissions or reenactments of the crime by the defendant; and whether such information is the product of reports by

the police and prosecutorial officers. *Commonwealth v. Sutton, supra* [485 Pa. 47, 400 A.2d 1305 (1979)]; *Commonwealth v. Casper, supra* [481 Pa. 143, 392 A.2d 287 (1978)]. The presence of one of these elements does not, in itself, warrant a presumption of prejudice. Inquiry must be made to determine whether such publicity has been so extensive, sustained and pervasive that the community must be deemed to have saturated with it.[4]

Footnote four provides:

4. "In determining whether the community has become saturated with prejudicial pretrial publicity, the trial court should consider the size and character of the area concerned, the pervasiveness of the media coverage in the community, and whether there has been a sufficient cooling off period between the publicity and commencement of trial that the prejudicial effect of the publicity may be deemed to have dissipated. *See Commonwealth v. Sutton, supra; Commonwealth v. Casper, supra.*

The court below properly considered the appropriate guidelines in determining whether appellant had been prejudiced by pre-trial publicity.

■ Our Supreme Court has stated: "It is clear that the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Similarly, a possibility that prospective jurors will have formed an opinion based on news accounts will not suffice." *Commonwealth v. Casper*, 481 Pa. 143, 151–2, 392 A.2d 287, 291–2 (1978). Even extensive pre-trial publicity within a county does not necessarily preclude a fair trial in that county. If the court is satisfied that an objective, open-minded jury can be selected from the members of the community exposed to the publicity it need not grant a change of venue. *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974). We are satisfied in this case that the court below did not abuse its discretion in refusing to grant a change of venue.

■ Appellant also contends that he could not conduct a meaningful voir dire of the jury since the court would not

allow him to question each juror out of the hearing of the other jurors. In support of this position appellant relies on *Commonwealth v. Johnson*, 440 Pa. 342, 269 A.2d 752 (1970) which involved pre-trial publicity of a highly inflammatory nature with racial overtones. The defendant was tried on charges of assault and battery, burglary and resisting arrest. A page one headline in the Pittsburgh Press (and the alleged offenses occurred in Pittsburgh) read "BLACK MOB BEATS TOP COP KELLY". A headline in the Pittsburgh Post-Gazette stated "BLACKS BEAT ASSISTANT SUPER-INTENDENT KELLY". A page one editorial in the Pittsburgh Press depicted assailants as a "vicious mob" and "hoodlums". Another headline stated "KELLY ASSAIL-ANT HELD IN NEW ATTACK." 440 Pa. 344, 345, 269 A.2d 752-4. As pointed out at 440 Pa. 350, 351, 269 A.2d 756-757:

> However, the pretrial publicity afforded appellant con-sisted of much more than the accounts of his encounter with the Assistant Superintendent. First, it included de-tailed accounts of appellant's prior record, which would, of course, not have been legally admissible at his trial. Second, and particularly prejudicial, because they were so deliberately inflammatory, were remarks by the district attorney, such as his statement that appellant and two other black spokesmen were "false leaders" who "speak for the arsonists, hoodlums and insurgents who would go to any extreme to avoid living under the laws of the Commonwealth." Inflammatory statements like this were hardly calculated to create an atmosphere for trial which would provide the "judicial serenity and calm to which petitioner was entitled."

The *Johnson* case held that in the circumstances therein presented, namely the highly prejudicial and inflammatory articles concerning the defendant and the highly inflamma-tory statements of the prosecutor, that the lower court abused its discretion in refusing to question each juror out of the hearing of the other jurors. In the instant case the appellant points to no specific instance of inflammatory

pre-trial publicity. The fact that the news media reported that the appellant was arrested for alleged offenses occurring at other times and other places than the offense in Bucks County, is not of itself inflammatory. Dr. Smith was the principal of a senior high school and this was newsworthy as was the fact that he had been arrested in other counties. However the material was not highly prejudicial nor was there evidence that it was disseminated throughout Bucks County. When such is the case the preferred procedure is either to sequester the jury or question the jurors individually outside the presence of the other members of the jury. *Commonwealth v. Reeves*, 255 Pa.Super. 409, 387 A.2d 877 (1978). In *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976), the trial court prohibited specific inquiry into what each potential juror may have heard or read about the case and also refused a motion for individual voir dire. This court found no abuse of discretion even though the district attorney in a television interview prior to trial commented on the defendant's recent convictions.

In the instant case three prospective jurors were excused for cause as a result of the voir dire on the grounds that they were familiar with some of the pre-trial media accounts. Four other prospective jurors recalled they had read some of the news accounts but could not recall what they said and all four indicated that they had no bias against the appellant. Three of these four prospective jurors were challenged peremptorily.

■■■ Appellant also claims that the court below erred in refusing to sequester the jury. The grant of a motion to sequester the jury is within the discretion of the court. Pa.R.Crim.P. 1111. The court's decision will not be reversed unless it abused its discretion or committed an error of law which controlled the outcome of the case. *Commonwealth v. Tolassi, supra.* Appellant has pointed to no actual prejudice from the court's refusal to sequester the jury. On the contrary, the trial judge continually cautioned the members of the jury not to read newspaper accounts of the trial. Appellant claimed during the trial that there were newspa-

per accounts of the trial, although he did not offer any of the articles into evidence. It is basic that a criminal defendant is to be guaranteed a fair trial before impartial jurors. *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). "Under the circumstances of this case, it is clear that the court took adequate cautionary measures to insure that no prejudice occurred to the appellant. This is all that due process requires." *Commonwealth v. Williams,* 262 Pa. Super. 508, 527,[1] 528, 396 A.2d 1286, 1296 (1978).

Appellant's next argument is that the trial court erred in refusing to suppress tangible evidence consisting of a uniform jacket of a type worn by security guards and a uniform type hat. The hat was obtained at the appellant's home on August 20, 1978, by a police officer who was acting under a search warrant authorizing a search for marijuana. The officer testified that at the time he seized the hat he realized that crimes allegedly had been committed in the area by a person impersonating a security guard. He was specifically aware of a robbery in Abington Township involving a uniformed man wearing a Brink's security uniform and another incident in Radnor Township, Delaware County, where a man was dressed in a security uniform and obtained money fraudulently from a store. The jacket was seized on August 21, 1978, by Officer Joseph Dudas of the Upper Merion Police Department who was conducting a search pursuant to a search warrant for silver ingots, coins and reproductions of works of art. These objects were not involved in the offenses involved in this appeal. While the officer was in the garage of appellant's home, where he had been admitted by appellant's daughter, Sherwyn, he observed the uniform jacket which was admitted into evidence. The officer stated that he had an idea that the jacket might be contraband because he knew that there were several incidents involving armed carrier services in the area where the person involved was picking up money from banks and department stores and was impersonating guard personnel. We believe, in the circumstances of this case, that the police were justified in seizing the uniform jacket and hat. In

*Commonwealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974) the police, acting under a search warrant, were looking for a stolen tool box containing mechanics' tools. While searching a dresser drawer for the tools they discovered a coin collection and gold pocket watch which one of the officers knew had been stolen. The court held that since the coins and watch were items that could easily be moved or disposed of that an "exigent circumstance for their warrantless seizure was present." 227 Pa.Super. 8, 323 A.2d 803 (1974). If a search uncovers evidence of crimes other than those involved in the search warrant, the evidence may be used in prosecution of the other crimes. *See Commonwealth v. Macek,* 218 Pa.Super. 124, 279 A.2d 772 (1971). In *Macek* the search was pursuant to an arrest rather than a search warrant but there is no reason to preclude the evidence seized simply because the original search was based on a search warrant rather than on an arrest. We believe that the tangible evidence was admissible although the appellant argues that possession of uniforms such as those worn by security guards is not a crime. In the instant case the reason the police reasonably believed that the uniforms were contraband was because they were aware that uniforms of the kind found in appellant's home were recently worn by someone impersonating a security guard in connection with various thefts in the area.

 Appellant's third argument goes to the admissibility of the testimony of eye-witnesses. His first objection is that the identification of some of the prosecution witnesses who were employees of the Sears and Roebucks Store where the offense occurred, was tainted as a result of an in-court confrontation between these witnesses and the appellant. The facts do not support this contention. The chief concern with identification evidence is its reliability. *Commonwealth v. Silver,* 260 Pa.Super. 232, 239, 393 A.2d 1239, 1242 (1978). Appellant contends that some of the prosecution's eye-witnesses in the Sears store on the day in question improperly observed the appellant in the courthouse at a suppression hearing prior to trial. He also complained that

the security manager at the Sears Roebucks Store in Neshaminey showed newspaper pictures and composite sketches to some of the witnesses who were Sears employees at the time of the offense. The security manager, Mr. Brown, was not a police officer or acting on behalf of the prosecution. The witnesses testified that they went to the manager's office out of curiosity. The court below held a supplemental suppression hearing in advance of trial and determined that the testimony of the witnesses identifying the defendant should be admitted. The court stated in its opinion "In each case they established the opportunity they had to observe the defendant at the time of the occurrence including all of the surrounding and attendant circumstances and testified without equivocation that their identifications were firm prior to the time they went to the office of the security manager and that they could identify defendant without regard to the photos." The court below found that primary illegality had not been established.[2] In *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978) our Supreme Court, quoting from *United States v. Higgins*, 458 F.2d 461 (3rd Cir. 1972) set forth the criteria to determine the reliability of an in-court identification as follows:

"(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the wit-

---

**2.** Even if primary illegality were established it need not necessarily exclude a witness' testimony.

It is well established in this jurisdiction that whether or not testimony of the witness indentifying an accused is admissible, the applicable test is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distiguishable to be purged of the taint. *Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978).

The Commonwealth is not required to prove an independent basis beyond a reasonable doubt and need ony establish its existence by clear and convincing evidence. *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976).

ness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification."

In the instant case the court below properly found that the eye-witnesses met the test of reliability.

■■■■ With respect to the witnesses the appellant also contends that the court below erred in refusing to permit testimony by his expert, a psychiatrist, "regarding the influence of group dynamics perception of employees' identification avowals." The appellant desired to have the psychiatrist testify hypothetically regarding the ability of identification witnesses to observe the defendant accurately. Where an issue involves a matter of common knowledge, expert testimony is inadmissible. *Collins v. Zediker*, 421 Pa. 52, 218 A.2d 776 (1966). As stated by the Supreme Court in *Commonwealth v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976):

> Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province. *Commonwealth v. Hampton*, 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray*, 460 Pa. 605, 334 A.2d 255 (1975); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). To permit psychological testimony for this purpose would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment.

In this case the court below properly denied the admission of testimony by the appellant's expert witness.

■■■■ Appellant also contends that the evidence was insufficient to sustain the conviction. In determining the sufficiency of evidence we must accept as true all of the evidence upon which the finder of fact could properly have

reached its verdict, giving the Commonwealth the benefit of all reasonable inferences arising from that evidence. *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979). Applying this test, the evidence was sufficient to sustain appellant's conviction. The witnesses observed the appellant for a sufficient time to identify him. Identification of the appellant by the assistant head cashier, Joan Staats, was positive and unequivocal. The appellant was trying to get into the inner office for some five minutes during which Miss Staats was calling the security department. He kept ringing the buzzer. Finally Miss Staats heard someone say to him "You can't go in there." At this point he came running around a corner toward Miss Staats and grabbed the ID card from her desk. The appellant was identified by another witness whom he bumped into in the back room after he jumped over the partition. He was observed by a salesman on the first floor as he rushed down the escalator pushing people out of his way.

The offense of theft by deception is defined as:

§ 3922. Theft by deception

(a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

Act of December 6, 1972, P.L. No. 334, 18 Pa.C.S.A. § 3922.

Criminal attempt is defined as:

§ 901. Criminal attempt

(a) Definition of attempt.—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S.A. § 901.

Reviewing the evidence in the light of the applicable law we believe it is sufficient to sustain appellant's conviction of attempted theft by deception.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.