448 A.2d 1064

**COMMONWEALTH of Pennsylvania**

v.

**Charles H. KEELER, Appellant.**

Superior Court of Pennsylvania.

Argued March 18, 1981.

Filed July 2, 1982.

326

Robert G. Kochems, Mercer, for appellant.

Charles S. Hersh, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before PRICE, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

The matter before us involves two separate appeals which by stipulation were consolidated.

On July 16, 1979, appellant was arrested and charged with aggravated assault, criminal attempt to commit rape, and simple assault. During the time appellant was awaiting trial on these charges in the Mercer County jail he was involved in an incident with a guard and on October 9, 1979, he was charged with aggravated assault and assault by a prisoner.

Appellant was convicted by a jury of criminal attempt to commit rape and indecent assault. The jury found him not guilty on the charge of aggravated assault and his demurrer to the charge of indecent assault was sustained by the trial judge, the Honorable Albert E. Acker. Thereafter, appellant's motion for a new trial and in arrest of judgment was denied and Judge Acker sentenced him to five (5) to ten (10) years on the attempted rape and one (1) to two (2) years for simple assault, the sentence to be served concurrently but consecutively to any sentence he was then serving.

Following his conviction before Judge Acker, by way of plea bargain, he pled guilty to the charge of simple assault by a prisoner before the Hon. John Q. Stranahan. After he had been sentenced by Judge Acker, Judge Stranahan sentenced him to two and one-half (2½) years to five (5) years to be served at the conclusion of Judge Acker's sentence.

We shall first address appellant's appeal from his plea of guilty to assault by a prisoner. Appellant does not challenge the legality of the sentence imposed by Judge Stranahan nor does he challenge the propriety of, the sentencing procedure. He would have us reverse on the ground that his sentence of

two and one-half (2½) years to five (5) years was excessive. We do not agree.

We have examined the entire record and find that the sentence imposed by Judge Stranahan was within the statutory limits and was not so manifestly excessive as to inflict too severe a punishment. *Commonwealth v. Straw*, 238 Pa.Super. 535, 361 A.2d 427 (1976). We affirm.

Turning next to appellant's appeal from his jury conviction of attempted rape and simple assault, appellant assigns as error the denial of his motion for a change of venue, the denial of his motion for a mistrial and that the evidence was insufficient to sustain a verdict of guilty of attempted rape. We shall consider his claims seriatim.

On July 17, 1979, the day following appellant's arrest for attempted rape, two newspapers of general circulation in Mercer County where the crime was committed reported the crime.

We have repeatedly held that an application for change of venue is addressed to the sound discretion of the trial court, and its exercise of discretion will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Smith*, 290 Pa.Super. 33, 434 A.2d 115 (1981); *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978). "In reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of the pre-trial publicity." *Commonwealth v. Kichline*, 468 Pa. 265, 273, 361 A.2d 282, 287 (1976). In *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973), *cert.* denied, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973) our Supreme Court held that one who claims that he was denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empanelling of the jury. However, this rule is subject to an important exception. In *Commonwealth v. Casper, supra*, the court decided that:

> In certain cases there, "can be pretrial publicity so sustained, so pervasive, so inflammatory, and so inculpatory

as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and actual jury prejudice," *Commonwealth v. Frazier*, 471 Pa. 121, 127, 369 A.2d 1224, 1227 (1977), because the circumstances make it apparent that there is a substantial likelihood that a fair trial cannot be had. See *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Commonwealth v. Rolison, supra* [473 Pa. 261, 374 A.2d 509]; *Commonwealth v. Dobrolenski*, 460 Pa. 630, 334 A.2d 268 (1975), citing American Bar Association Standards Relating to Fair Trial and Free Press § 3.2 (Approved Draft, 1968); *Commonwealth v. Pierce, supra* [451 Pa. 190, 303 A.2d 209].[6] It is this exception that we must discuss here. It is trite but true to note that a presumption of prejudice pursuant to this exception requires the presence of exceptional circumstances. Similarly, generalizations in this area are difficult because "each case must turn on its special facts." *Commonwealth v. Pierce, supra*, 451 Pa. at 198 n.3, 303 A.2d at 213 n.3, quoting *Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250, 1252 (1959). Nonetheless, there are certain factors which this Court has identified as relevant to a determination of whether prejudice should be presumed.

Id., 481 Pa. at 151, 392 A.2d at 291.

Clearly then, the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Instead, the court will consider the following factors in assessing whether a trial judge abused his discretion in denying a change of venue motion based on pre-trial publicity: "(1) the length of time between the publicity and the trial; (2) the nature and extent of the publicity (whether inflammatory or basically factual and how pervasively the information has been disseminated); (3) the degree to which the information is attributable to police or prosecution sources; (4) the community atmosphere; (5) the trial court's efforts to insulate the jury against and/or diminish the impact of the publicity; and (6) the probable efficacy of a change of

venue." *Commonwealth v. Richardson,* 476 Pa. 571, 586, 383 A.2d 510, 518 (1978), *cert. denied,* 436 U.S. 910, 98 S.Ct. 2248, 56 L.Ed.2d 410 (1978) (Citations omitted.)

Here the appellee concedes that the two newspaper articles were inflammatory, that they revealed the appellant's criminal record and that the news content was obtained from the police and the prosecuting officer. Even so, unless the publicity has been so extensive, sustained and pervasive, without sufficient time between publication and trial for the prejudice to dissipate, so that the "community must be deemed to have been saturated with it," we will not find an abuse of discretion in a denial of a motion to change venue. *Commonwealth v. Casper, supra.*

The trial judge wrote a comprehensive and accurate analysis of appellant's change of venue claim. The trial judge pointed out that during the selection of the jury, individual voir dire examination was used. Twenty-seven (27) names were drawn from the jury selection box in the selecting of the twelve (12) jurors. Further, out of an abundance of caution, the jurors were sequestered throughout the entire trial until the jury returned its verdict. Each juror was inquired of as to whether he had knowledge from any source concerning the case. Those few who read or heard of the case previously were asked if they could set aside an information previously obtained. All prospective jurors that either appellant or appellee wanted removed were in fact excused.

We agree with the lower court that the statements contained in the two newspaper articles, although regrettable, did not result in a presumption of prejudice, nor was there a showing that the jury was unable to render a fair and impartial verdict based solely on the evidence introduced during the trial.

We hold that there was no evidence of actual prejudice, nor was the pre-trial publicity so extensive, pervasive and sustained so as to justify a presumption of prejudice. Accordingly, there was no error in denying appellant's motion for a change of venue.

Next, appellant contends that when the appellee elicited from a police officer testimony concerning an inculpatory statement made by appellant, which was not made available to appellee until the day of trial, but which was never made available to appellant despite an agreement by the prosecutor to make all such statements available, the lower court erred in not granting appellant's motion for mistrial or to strike the elicited testimony.

On September 7, 1979, appellant sought certain items of discovery from the Commonwealth. Pursuant to Pa.R. Crim.P. 305B(1)(b), appellant requested:

Any statements of the defendant given to any agent of the Commonwealth in connection with the subject matter of this case; and, whether or not the Commonwealth presently intends to call that agent at trial and whether or not the statement is oral or written.

Pa.R.Crim.P. 305 D provides:

If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material or witness.

Pa.R.Crim.P. 305 E provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

The testimony of the Commonwealth's witness, Patrolman Paul Michael Zarecky, on direct examination, which gave rise to this claim of error, was as follows:

Q. Now did you inquire of him as to any wearing apparel that he might be missing?

A. Yes at the scene we read his rights and back again at the station we read his rights and I was with Officer Shelfont and he acknowledged the understanding of his rights and we asked if he would talk to us and he said, "I might as well" or something to that affect [sic], okay.

Q. All right and did you notice anything—did you ask him about anything as far as wearing apparel that he might be missing?

A. Yes the watch there, the exhibit there was returned to our station and it was found at the same exact location where the glasses, the broken glasses of Mrs. Cooper were laying.

Q. All right.

A. And I asked him, I said, "Do you have a watch?" and he said, "Yea I have a watch" and then for a minute he went like this and then he said, "No I don't have a watch."

At this point appellant's counsel asked for permission to approach the bench; permission was given and the following sidebar conference took place:

## (SIDEBAR CONFERENCE)

MR. WHERRY: May we have an offer? Your Honor sometime ago we filed a petition to compel disclosure of all evidence favorable to the defendant and one of the matters was any and all statements made by the defendant and this was not offered at the preliminary hearing nor was it offered by the Commonwealth at anytime any statement that that man made.

THE COURT: Did they tell you he didn't make any statements?

MR. WHERRY: They didn't tell us anything about the statement one way or the other.

THE COURT: All right.

MR. WHERRY: I don't think...

THE COURT: What else if [sic] he going to say if anything.

MR. KARSON: That's it.

THE COURT: No other statements?

MR. KARSON: No.

THE COURT: Let's look here.

MR. KARSON: I think Mr. Wherry can inquire of the fact that this is not in the report of this patrolman that was available to you. It wasn't in a report and I found out about it today.

MR. WHERRY: Okay.

THE COURT: So you're saying that really wasn't a statement in the sense it was...

MR. KARSON: I don't think it's particularly a statement in terms of what the nature of that is required.

MR. WHERRY: Let me get this straight. Is this something that was in no report and you found out from Zarecky. He told you today?

MR. KARSON: That's exactly right.

MR. WHERRY: Because we certainly weren't furnished any statement and Zarecky never hit the stand at preliminary or any other time.

THE COURT: All right what is to be done then?

MR. KARSON: I might just continue for your sake of disclosure that I believe that my understanding is that the Officer will continue to testify that he did look at the wrist of Mr. Keeler and he noted like a suntan, you know how it leaves a suntan around a watch.

MR. WHERRY: I think he can testify to anything he saw the only problem I have is I have a statement that probably had we known that there was a statement we probably would at least put in a motion of some nature to suppress it.

THE COURT: Well I don't take this to be statement in the popular sense and I think that if you want any and all matters that he may have even though not reduced to writing you would have a right to ask for that but reading the motion it asked for any and all statements. It may be a question of interpretation.

MR. WHERRY: Take a look at No. 7 down here Your Honor.

THE COURT: Any indictment given to any agent or in connection with subject matter...

MR. WHERRY: I think if you go to the next side it's... It says whether oral or written.

THE COURT: All right we have a problem. What do you want to do about it?

MR. WHERRY: We move for a motion to strike and we move for a mistrial.

THE COURT: Both denied.

MR. WHERRY: Thank you Your Honor.

(SIDEBAR CONFERENCE CONCLUDED)

Patrolman Zarecky then completed his testimony in chief concerning the watch as follows:

Q. Patrolman Zarecky did you make any personal observations as to the hand or wrist of Mr. Keeler?

A. Yes I did.

Q. All right and in looking at his hand or wrist area would you describe to the Court and jury what if anything you saw on his wrist?

A. Okay the wrist in the normal position of where a watch would be worn was of a lighter color, a whiter color and the hand around the area was of a suntan or darker skin color and it appeared in my opinion that he recently had been wearing a watch on that hand.

Following the testimony of Patrolman Zarecky, including cross-examination by appellant's counsel concerning the watch, the court sua sponte asked for a sidebar conference, which was as follows:

(SIDEBAR CONFERENCE)

THE COURT: All right I'm somewhat concerned about the introduction into evidence of the question concerning the watch and the statements made by the defendant and the watch. It would be admissible under cer-

tain—merely by the fact it was found and the man had a watch but the statements bother me. Under Pennsylvania Rule of Criminal Procedure 305 dealing with disclosure by the Commonwealth that's mandatory. It says that any written confession or inculpatory statement or the substance of any oral confession or inculpatory statement is something which is required to be disclosed if there is a demand and it appears that the demand is here. Now the reason it has to be disclosed I presume is so that the defendant can file a motion to protect himself in the event that it's improperly obtained and we're going to cure that or attempt to cure it by having a hearing of suppression tomorrow morning at 9:15 as if it had been filed properly as if notice had been given and under this Rule 305 and as if it is attacked on the grounds of both that warnings were not adequately given and that through some form of compulsion or duress the statement had been obtained and on any other basis that the defendant desires to advance. Do you know of any others at this time?

MR. WHERRY: No Your Honor. I haven't discussed it with him about any statement.

THE COURT: We'll have Officer Zarecky present and any other witnesses that the Commonwealth wishes to call on that subject. In addition any witnesses that the defense wishes to call on that subject and we'll receive the testimony and determine whether or not adequate warnings were given and all the rest and see if the statement can stand. If the statement cannot stand then we have a real problem of what to do about it and we'll face that when we get to it. The motion for mistrial will stand and the motion to instruct the jury will stand and we'll see what we're going to do on that. Is there anything further that the defense attorney desires to have done?

MR. WHERRY: No Your Honor I think the Court's covered the problem adequately.

336

MR. KARSON: I would give my apology both to the Court and—I misinterpreted the thing and that was my fault. I bent it very strongly in favor of the Commonwealth.

The Commonwealth conceded that it violated Rule 305B(1)(b).

The statement elicited from Patrolman Zarecky was clearly inculpatory and the Commonwealth concedes that it violated Pa.R.Crim.P. 305B(1)(b). The statement did not appear in any written reports and it would appear that the lower court accepted as true the statement of the prosecutor that he did not come into possession of the statement until the day it was elicited. We have no reason to disturb that finding.

The threshold question in this assignment of error is whether the court acted properly in conducting a suppression hearing with reference to the statement concerning the watch or whether it committed error in denying appellant's motion for mistrial or to strike.

■ "Under Section E of Pa.R.Crim.P. 305, when it becomes apparent that a party has failed to comply with the provisions of the Rule, the trial court has broad discretion in choosing an appropriate remedy." *Commonwealth v. Parente*, 294 Pa.Super. 446, 440 A.2d 549 (1982). The court may order the offending party to permit discovery or inspection, or it may grant a continuance, or it may prohibit the use of the testimony not disclosed, or *it may enter such other order as it deems just under the circumstances.* Pa.R.Crim.P. 305 E (Emphasis supplied).

In this case the jury already heard the inculpatory statement and, therefore, it was not feasible for the court to permit discovery or inspection or to prohibit the use of the testimony. The appellant never requested a continuance; to the contrary, appellant argues in his brief that the granting of a continuance would not have provided an adequate remedy. With reference to Patrolman Zarecky's further testimony, appellant's counsel stated at the first sidebar conference, *supra* at p. 1068:

I think he can testify to anything he saw the only problem I have is I have a statement that probably had we known that there was a statement we probably would at least put in a motion of some nature to suppress it.

At the conclusion of Patrolman Zarecky's testimony the lower court at sidebar conference indicated its concern that Pa.R.Crim.P. 305 B(1)(b) had been violated. The court then opined that the reason for the disclosure rule was to put the appellant on notice of any incriminating statement so that he would then have an opportunity, if he so wished, to file a motion to prevent its use by the Commonwealth. The court then stated that it would hold a suppression hearing the following morning out of the presence of the jury, as if the motion had been properly filed, and as if notice had been given. Appellant was given leave to attack the statement on the grounds that the proper warnings were not given to appellant or that the statement was obtained from appellant by some form of compulsion or duress *or on any other basis that appellant desired to advance.*[1] (Emphasis supplied).

Historically, and almost universally, in a criminal prosecution, the accused had no right to discovery.

In *Commonwealth v. McQuiston*, 56 D. & C. 533 (1946), the defendant sought to compel the district attorney to turn over to him for inspection a statement he had made to the district attorney. The court held that since no statute in Pennsylvania covered the question it would have to be decided by the common law. The court then cited Wigmore on Evidence, Vol. 3, § 1859g, for the proposition that in criminal cases: "At common law, no right of inspection of documents before trial was conceded to the accused." And in 2 Wharton's Criminal Evidence 1311, 1312, the court stated that it was there set forth that: "The general rule is that the accused has no right of inspection or disclosure before trial of evidence in the possession of the prosecution."

1. The notes of testimony of the suppression hearing were never transcribed and, consequently, they are not available to us. The suppression motion was denied; however, appellant is not contesting that denial on appeal.

The same question arose in *Commonwealth v. Smith,* 67 D. & C. 598 (1949), and the court, relying upon the rationale in *Commonwealth v. McQuiston, supra,* denied defendant's request to compel the district attorney to turn over to him his own statement and that of his wife. The court went on to say:

> We might add that under the Act of January 28, 1777, 1 Sm.L. 429, § 2, 46 P.S.Sec. 152, the English common law became the law of this Commonwealth and that we also have neither found nor been referred to any statute which gives to the accused the right to inspection or disclosure before trial of documents or evidence in possession of the prosecutor.

*Commonwealth v. Smith, supra* at p. 602. Former Chief Justice Horace Stern cited both *McQuiston* and *Smith* with approval in *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). Later, our Supreme Court in *DiJoseph Petition,* 394 Pa. 19, 145 A.2d 187 (1958), while saying that it was not adopting a *new* discovery rule, stated:

> However, a trial court having jurisdiction of an alleged offender possesses *discretionary power* to permit a defendant, in appropriate circumstances, to examine and inspect in advance of trial physical or documentary evidence in the hands of the prosecution. (Emphasis supplied).

The *DiJoseph Petition* court reaffirmed the long-held view that an accused was not entitled to disclosure as a matter of right; the trial judge in each case and on each application for disclosure would determine what should be done in the interest of justice and the only question for consideration by an appellate court would be whether the lower court properly exercised its discretion. See *Commonwealth v. Hoban et al.,* 54 Lackawanna Jurist 213, 218 (1952) (not reported in the state reports).

The Supreme Court of the United States relaxed the hard and fast rule of non-disclosure to an accused by its pronouncement in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) that the withholding of evidence that would exculpate an accused or reduce the penalty constituted a violation of the accused's due process rights.

On June 30, 1965, the Supreme Court of Pennsylvania, exercising its general supervisory powers over all courts in the Commonwealth, adopted Pa.R.Crim.P. 310 [2] which essentially set forth what the court had been saying in cases presented to it on appeal, namely, that absent exceptional circumstances and compelling reasons an accused has no right to inspection and disclosure of Commonwealth evidence prior to trial. *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973), *cert. denied*, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); *Commonwealth v. Caplan*, 411 Pa. 563, 192 A.2d 894 (1963). At the same time, Rule 310 gave the lower court the *discretion* to order the attorney for the Commonwealth to permit the defendant to inspect and copy or photograph any *written confessions* and *written statements* made by the defendant. (Emphasis supplied).

In *Commonwealth ex rel. Specter v. Shiomos*, 457 Pa. 104, 320 A.2d 134 (1974), the court, although finding that there had been no showing of exceptional circumstances and compelling reasons, and thus affirming the lower court's refusal to order pretrial disclosure, unanimously expressed support for more liberal discovery procedures in the trial of criminal cases.

In 1977 Rule 310 was amended by the promulgation of Pa.R.Crim.P. 305, and in one quantum leap the Supreme

**2.** Pa.R.Crim.P. 310—*Pretrial Discovery and Inspection* provided:
All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances, and compelling reasons. The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth. It should be noted that Rule 310 was adopted before the disclosure requirement of all evidence favorable to the accused enunciated in *Brady v. Maryland, supra*, reached constitutional stature and thus the Rule failed to set forth that requirement.

Court adopted the more liberalized standards of pretrial discovery found in the ABA Project on Standards for Criminal Justice, Discovery and Procedure Before Trial, § 1.2 et seq. (Approved Draft 1970). The new rule corrected the deficiency of Rule 310 in its omission of the *Brady v. Maryland* requirement, *supra*, 305 B(1)(a) and in addition pretrial disclosure was also mandated in the following areas: written or oral inculpatory confessions and statements (305 B(1)(b)); defendant's prior criminal record (305 B(1)(c)); circumstances and results of any identification of defendant (305 B(1)(d)); results or reports of scientific tests (305 B(1)(e)); tangible objects (305 B(1)(f)) and transcripts and recordings of electronic surveillance (305 B(1)(g)). Rule 305 C provides for disclosure by the defendant; Rule 305 D provides for a continuing duty to disclose; Rule 305 E provides a remedy for failure to disclose; Rule 305 F provides for the issuance by the court of protective orders and Rule 305 G sets forth the nondisclosure provision applicable to work product.

■ As indicated above, instantly the Commonwealth/appellee conceded that it should have informed appellant of the incriminating statement which was elicited from Patrolman Zarecky and that in not doing so it violated Pa.R.Crim.P. 305 B(1)(b). We cannot say that the lower court's decision to conduct a suppression hearing on the improperly elicited testimony was not a proper exercise of discretion, or, to put it another way, that it constituted an abuse of discretion. The court did exactly what appellant says he would have done had he known about the testimony concerning the "watch" before it was elicited. Further, our review of this entire record convinces us that the procedure adopted by the lower court did not unconstitutionally deny the appellant a fair trial. See Concurring and Dissenting Opinion of Mr. Justice Roberts in *Commonwealth v. Smith*, 417 Pa. 321, 342, 208 A.2d 219, 230 (1965). Finding neither an abuse of discretion nor prejudice to appellant, the second allegation of error is dismissed.

Finally, appellant claims that the evidence was insufficient to sustain a verdict of guilty for attempted rape.

Viewing the evidence in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Green*, 493 Pa. 409, 426 A.2d 614 (1981); *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976), the facts are as follows:

■ On July 16, 1979, Barbara L. Cooper, a young married woman, was wheeling her baby carriage along a secondary road near a field in the Borough of Greenville. She was en route to her sister's house from her father's house. Her baby was fourteen months of age. It was in the early evening hours. She passed within ten feet of a person who was drawn to her attention because he was wearing a shirt very similar to one she had recently purchased for her brother-in-law. At this time, she observed his general appearance. Within minutes a shirt was thrown over her head. Thinking it was a joke, she said, "What's going on?" or words to that effect. The assailant replied, "I'm going to rape you." He then pushed her to the ground, punched her, and kicked her in the stomach. During the struggle, her glasses were broken. She screamed and grabbed her assailant on the neck and dug in her fingernails. He immediately jumped up and put the shirt over his face up to his eyes. During all of this the victim was on the ground screaming and yelling. It was broad daylight. The victim noticed the appellant's clothing consisted of blue jeans and tennis shoes. The stroller with the baby inside was in the middle of the road. The victim was ten to fifteen feet away in the field. She immediately ran screaming to her child and then to her sister's home. She was met prior to reaching it by her relatives. The police were on the scene within several minutes, and a police officer saw the appellant within a block or two of the incident. As the appellant saw the officer as they approached each other upon a bridge, the appellant turned to walk away from the officer but the officer stopped him. The appellant had scratch marks on his neck similar to those described by the victim, and his attire matched the victim's description.

Clearly, on these facts alone, there was sufficient evidence to support the jury's verdict of guilty of attempted rape.

For all of the foregoing reasons, the order and judgments of sentence are affirmed.